181 P.3d 849 (2008)
Jane YURTIS, Appellant,
v.
Harve PHIPPS, Respondent.
No. 23940-3-III.
Court of Appeals of Washington, Division 3.
April 1, 2008.
*851 Jane Yurtis (Appearing Pro Se), Ione, WA, for Appellant.
Heather Yakely, Attorney at Law, Spokane, WA, for Respondent.
KULIK, J.
¶ 1 Jane Yurtis appeals a Pend Oreille County Superior Court order granting Harve Phipps's motion to dismiss and motion for sanctions. Mr. Phipps seeks an award of attorney fees and costs as well as sanctions against Ms. Yurtis. In addition, Mr. Phipps asks this court to enter an order preventing Ms. Yurtis from filing any further lawsuits against him.
¶ 2 Since 1997, this court and the Supreme Court reviewed Ms. Yurtis's appeals on numerous occasions. An individual does not have an absolute and unlimited constitutional right of access to the judicial system. Ms. Yurtis's claims have been repeatedly rejected and found to be frivolous. We conclude that the trial court did not err by granting the motion to dismiss and motion for sanctions. We also award attorney fees and costs to Mr. Phipps, and order sanctions of $2,500 to be paid by Ms. Yurtis to Mr. Phipps. Finally, Ms. Yurtis is prohibited from filing any further action or appeals related to the 1991 real estate purchase and sale agreement.

FACTS
¶ 3 This case has a long and convoluted procedural history, which includes numerous petitions to both the Washington State Supreme Court and the United States Supreme Court.
¶ 4 The 1991 Land Transaction. The case stems from a 1991 real estate purchase and sale agreement (hereinafter 1991 land transaction) entered into by Ms. Yurtis, the seller, and Richard and Carol Jones (the Joneses), the buyers. The sale agreement named attorney Harve Phipps as the closing agent, and the terms of the agreement required all liens to be satisfied by Ms. Yurtis prior to, or on the day of, closing. Prior to closing, Mr. Phipps discovered two liens on the property. Ms. Yurtis refused to satisfy the liens and, as a result, the title to the property was unmarketable at closing.
¶ 5 The Joneses sued for specific performance of the agreement and the case went to trial in January 1993. The trial court found that the Joneses "have been ready, willing, *852 and able to close but have insisted that the two liens be cleared from the title prior to closing." Clerk's Papers (CP) at 177. Finding that Ms. Yurtis breached the sale agreement to discharge all liens, the trial court granted specific performance and ordered that all liens be satisfied in order to clear title. Mr. Phipps satisfied the liens and the sale closed in March 1993.
¶ 6 Actions Against Harve Phipps. In 1993, Ms. Yurtis filed a complaint against Mr. Phipps for breach of contract and contempt of court. In December 1993, the trial court granted Mr. Phipps's motion for summary judgment and dismissed Ms. Yurtis's suit with prejudice. In its decision, the trial court found that:
2. The conduct of Defendant Harve Phipps in connection with the closing of the real estate transaction which forms the basis of Plaintiff's Complaint was, at all times, as a matter of law, consistent with previous orders of the Court, the law of the State of Washington and the standard of care for attorneys practicing in Eastern Washington[.]
3. [Ms. Yurtis's] claims against Defendant are, as a matter of law, frivolous and without any merit and Defendant is entitled to award of costs and attorneys fees incurred in defense of this action.
CP at 160. The trial court awarded Mr. Phipps attorney fees in the amount of $1,641.90.
¶ 7 Ms. Yurtis appealed the decision; in February 1997, this court dismissed her appeal. In his ruling, the commissioner noted that the case against Mr. Phipps was essentially a relitigation of the issues presented in Jones v. Yurtis, noted at 79 Wash.App. 1024, 1995 WL 940600 (1995). The commissioner also specifically found that:
Ms. Yurtis sued her former attorney for breach of contract. . . . Her "Petition for Justice Re: Breach of Contract/Contempt of Court" contends that her former attorney Harve Phipps wrongfully closed the transaction[.]
CP at 180-81 (emphasis added).
¶ 8 The commissioner found that the appeal was frivolous and without merit:
Ms. Yurtis' brief and her beliefs are founded upon a faulty
premise. . . . Her attempted supplementation of the record, if granted, provides no grounds for assailing the fundamental theories upon which she has lost in both trial court actions and again on appeal.
This appeal has absolutely no merit. It rehashes issues from a case in which Ms. Yurtis did not prevail, and given this Court's earlier opinion, there is no reasonable possibility of reversal. The appeal is frivolous[.]
CP at 181-83.
¶ 9 As a result, Mr. Phipps was awarded $1,000 in sanctions as well as attorney fees and costs "for having to defend against a groundless appeal." CP at 183. Ms. Yurtis's motion to modify the commissioner's ruling was denied, as was her petition for review.[1]Yurtis v. Phipps, 133 Wash.2d 1015, 946 P.2d 402 (1997). This court issued a mandate terminating appellate review of the case on October 9, 1998.
¶ 10 In early 1999, Ms. Yurtis filed a motion to recall the mandate. Her motion was denied, and she filed a notice of discretionary review at the Washington State Supreme Court. In denying her motion for discretionary review, the Supreme Court commissioner stated:
"Ms. Yurtis is trying once more to reopen a case she has conclusively lost many times. She presents no new argument or authority. Her rehashing of previously-rejected arguments provided no basis for the Court of Appeals to recall its mandate, and provides no basis for this court to grant discretionary review. Indeed, Ms. Yurtis's efforts to continue with this lawsuit are not just frivolous, but a gross *853 abuse of the justice system warranting sanctions under RAP 18.9(a)."
CP at 141.
¶ 11 The commissioner imposed sanctions in the amount of $250. Subsequently, a panel of justices denied Ms. Yurtis's motion to modify the commissioner's ruling. The United States Supreme Court denied her petition for certiorari as well as her petition for rehearing. Yurtis v. Phipps, 528 U.S. 942, 120 S.Ct. 354, 145 L.Ed.2d 276 (1999); Yurtis v. Phipps, 528 U.S. 1057, 120 S.Ct. 609, 145 L.Ed.2d 504 (1999).
¶ 12 Nevertheless, in June 2003, Ms. Yurtis filed a second motion to recall the mandate terminating review, to supplement the record, and to consolidate her suit against Mr. Phipps with the Joneses' lawsuit. The Court of Appeals denied the motion in July 2003. Ms. Yurtis again petitioned for discretionary review by the Washington State Supreme Court. In a ruling filed on February 9, 2004, the commissioner of the Supreme Court denied her motion for discretionary review, stating:
Ms. Yurtis bases her request for review, and the underlying motion to recall the mandate, on an elaborate but largely incomprehensible claim of fraud. To the extent that her arguments can be understood, they appear to rehash claims made and rejected on numerous prior occasions. Nothing Ms. Yurtis presents now, in any event, would justify recalling a mandate issued five and one-half years ago. Moreover, while Ms. Yurtis may firmly believe in her cause, her seemingly ceaseless pursuit of this litigation continues to be both abusive and frivolous, warranting further sanctions.
CP at 142. Additionally, the court imposed a $500 sanction, paid to Mr. Phipps, and a $250 sanction, paid to the court itself. The ruling stated that no further pleadings may be filed in the action until the Supreme Court sanctions were paid. Ms. Yurtis's subsequent motion to modify the ruling was denied.
¶ 13 Then in July 2004, Ms. Yurtis filed a complaint in the Pend Oreille Superior Court against Mr. Phipps seeking relief under CR 60(c) from the "orders, judgments, and proceedings" which were based on the "fallacious determination" that Mr. Phipps was her former attorney. CP at 156. The complaint alleged that the commissioner's 1997 ruling erroneously concluded that Mr. Phipps was Ms. Yurtis's "former attorney" in the 1991 land transaction. CP at 155.
¶ 14 Ms. Yurtis argued that Mr. Phipps was not her attorney; therefore, there was no basis for the authority he assumed in appearing as her attorney in the 1991 land transaction. She contends that as long as the inference stands that Mr. Phipps was her attorney, it is not material that Mr. Phipps failed to disclose that the purchasers refused to accept the unanticipated lien. She additionally argues that as long as the inference remains, "no violation of RPC 3.3(a)(2) exists" and as such, she has "no basis for motioning to vacate the order for the specific performance of the purchase and sale agreement." CP at 156.
¶ 15 On January 27, 2005, the trial court granted Mr. Phipps's motion to dismiss and motion for sanctions. Mr. Phipps was awarded sanctions in the amount of $1,000 and his attorney was awarded $500. The trial court also ordered Ms. Yurtis to pay $2,748 in attorney fees and costs. On February 17, 2005, the court entered an order to not accept notice of appeal. The order was withdrawn on March 17, 2005.
¶ 16 On the same day the order was withdrawn, Ms. Yurtis filed a notice of appeal. Ms. Yurtis specifically appeals the "Ruling Denying Review and Imposing Sanction,"[2] entered on February 9, 2004, and the "Order Granting Defendant's Motion to Dismiss and Motion for Sanctions,"[3] entered on January 27, 2005. Our commissioner ruled that Ms. Yurtis's appeal of the January 27, 2005 order was timely.
¶ 17 It should be noted that in the current appeal, Ms. Yurtis filed an amended motion to supplement the record and to impose sanctions pursuant to RAP 9.11(a). Ms. Yurtis sought to supplement the record with documents *854 from Yurtis v. Phipps, No. 93-2-00122-0 and Jones v. Yurtis, No. 92-2-00068-3. The commissioner denied the motion and a panel later denied Ms. Yurtis's motion to modify that ruling. Ms. Yurtis filed a motion for discretionary review to the Supreme Court. The Supreme Court denied review and awarded sanctions in the amount of $250 to Mr. Phipps and $250 in attorney fees. In its ruling, the Supreme Court stated:
This is the second lawsuit Ms. Yurtis has brought against Harve Phipps, the attorney who acted as her closing agent in a real estate sale many years ago. The first lawsuit resulted in several reviews by this court, and the imposition of sanctions against Ms. Yurtis by this court on grounds that the lawsuit or the pleading under review was abusive and frivolous. When that case finally ran its course, Ms. Yurtis brought this second action against Mr. Phipps, apparently in an attempt to rehash a dispute that she had conclusively lost many times.
. . . .
. . . The bulk of her motion seems to recount her version of her underlying dispute with Mr. Phipps. Although her sentences are generally grammatical, they convey little in the way of comprehensible narrative, and no cogent legal argument. The motion is denied.
. . . Ms. Yurtis's seemingly ceaseless pursuit of litigation against Mr. Phipps continues to be both abusive and frivolous, warranting further sanctions.
Wash. Supreme Court Order Denying Review and Imposing Sanctions, Yurtis v. Phipps, No. 79097-3 (Sept. 20, 2006).
¶ 18 On December 6, 2006, the Supreme Court denied Ms. Yurtis's motion to modify the commissioner's ruling.

ANALYSIS
¶ 19 Motion to Dismiss. Ms. Yurtis contends that the trial court erred by granting the motion to dismiss her July 2004 complaint. She argues that: (1) there was no evidence that Mr. Phipps was her attorney, (2) the court erroneously found that she accepted that Mr. Phipps was her attorney, and (3) she was not allowed to present all of her evidence.
¶ 20 The trial court granted Mr. Phipps's CR 12(b)(6) motion to dismiss on the grounds of res judicata and collateral estoppel. A trial court's decision to grant a CR 12(b)(6) motion to dismiss is a question of law and is reviewed by this court de novo. Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994).
¶ 21 A complaint may be dismissed by a trial court under CR 12(b)(6) if it fails to state a claim upon which relief can be granted. Hoffer v. State, 110 Wash.2d 415, 420, 755 P.2d 781 (1988), aff'd, 113 Wash.2d 148, 776 P.2d 963 (1989). For purposes of a CR 12(b)(6) motion, the plaintiff's allegations are presumed to be true. Cutler, 124 Wash.2d at 755, 881 P.2d 216. A complaint can survive a CR 12(b)(6) motion if any set of facts could exist that would justify recovery. Hoffer, 110 Wash.2d at 420, 755 P.2d 781. Importantly however, an action may be dismissed under CR 12(b)(6) if "`it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Lawson v. State, 107 Wash.2d 444, 448, 730 P.2d 1308 (1986) (quoting Bowman v. John Doe, 104 Wash.2d 181, 183, 704 P.2d 140 (1985)).
¶ 22 Reviewing the decision de novo, this court concludes that the trial court did not err by granting Mr. Phipps's CR 12(b)(6) motion to dismiss. We conclude that Ms. Yurtis's complaint fails to state a claim upon which relief can be granted. Because review is de novo, an appellate court may sustain the trial court's judgment upon any theory that is established by the pleadings and supported by the record. Wendle v. Farrow, 102 Wash.2d 380, 382, 686 P.2d 480 (1984). For purposes of the CR 12(b)(6) analysis, we assume that Ms. Yurtis is correct in her allegation that Mr. Phipps was not her former attorney and did not have the authority to appear on her behalf. Despite this assumption, it remains that Ms. Yurtis's complaint fails to state a claim upon which relief can be granted.
*855 ¶ 23 First, Ms. Yurtis's complaint seeks trial court review of a Court of Appeals' ruling. Ms. Yurtis's complaint alleges that "factual issues of the previous claim had been resolved by inferring that Mr. Phipps had authority to appear as my attorney."[4] CP at 155. She argues that as long as this incorrect inference is allowed to continue, the unanticipated lien is not material and therefore she is unable to prove a RPC 3.3(a)(2) violation. Without a showing that Mr. Phipps violated RPC 3.3(a)(2), Ms. Yurtis concedes that she has no basis to file a motion to vacate the specific performance order.
¶ 24 A trial court has no authority to review a ruling of the Court of Appeals. Ms. Yurtis has exhausted her challenge of the 1997 commissioner's ruling. Ms. Yurtis's motion to modify the commissioner's ruling was denied, as was her petition for review to the Supreme Court. Yurtis, 133 Wash.2d 1015, 946 P.2d 402. A mandate terminating review was entered in 1998. Significantly, RAP 12.2 provides:
After the mandate has issued, the trial court may, however, hear and decide postjudgment motions otherwise authorized by statute or court rule so long as those motions do not challenge issues already decided by the appellate court.

(Emphasis added.)
¶ 25 Second, even assuming that the trial court had the authority to hear Ms. Yurtis's complaint, she fails to state a claim upon which relief can be granted. A finding that Mr. Phipps was not Ms. Yurtis's attorney and did not have the authority to appear on her behalf is irrelevant to the issue of the 1991 land transaction or Mr. Phipps's conduct. Mr. Phipps, by the express terms of the real estate contract, was named as closing agent for the 1991 land transaction. He was also ordered by the trial court, in the specific performance order, to satisfy all liens against the property in order to clear title and allow the sale to close. His actions, whether in the capacity of Ms. Yurtis's attorney, a court-appointed attorney, or a closing attorney, were found to be consistent with the real estate contract and the court order. In granting Mr. Phipps's motion for summary judgment in Ms. Yurtis's breach of contract claim, the trial court found:
The conduct of Defendant Harve Phipps in connection with the closing of the real estate transaction which forms the basis of Plaintiff's Complaint was, at all times, as a matter of law, consistent with previous orders of the Court, the law of the State of Washington and the standard of care for attorneys practicing in Eastern Washington[.]
CP at 160.
¶ 26 Third, in her complaint, Ms. Yurtis contends that if Mr. Phipps was not her attorney, she could prove a RPC 3.3(a)(2) violation because Mr. Phipps failed to inform the trial court, at the specific performance trial, that the Joneses refused to accept the title with the unanticipated liens. Specifically, RPC 3.3(a)(2) prohibits an attorney from failing to disclose a material fact to a tribunal "when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client." However, there is no evidence that Mr. Phipps kept this information from the trial court. In fact, the trial court, in its findings of fact, specifically found that the Joneses "have been ready, willing, and able to close but have insisted that the two liens be cleared from the title prior to closing." CP at 177. Accordingly, there was no RPC 3.3(a)(2) violation because there is no evidence that Mr. Phipps withheld the fact that the Joneses refused to accept title with the unanticipated liens.
*856 ¶ 27 Fourth, Ms. Yurtis argues that the trial court erred by granting the motion to dismiss before she was finished with the presentation of her evidence and by finding that she accepted that Mr. Phipps was her attorney. There is no evidence in the record that either of these events occurred. A motion to dismiss based on CR 12(b)(6) is a motion on the pleadings, and extraneous evidence is not considered. As such, Ms. Yurtis was not denied the opportunity to present evidence because she had no right to present evidence.
¶ 28 Fifth, there is no evidence that the trial court found that Ms. Yurtis accepted that Mr. Phipps was her attorney. During its oral opinion, the following conversation occurred:
THE COURT: . . . [Y]ou make an argument as best I understand it, to the effect that while you accept that on the surface that Mr. Phipps was your attorney and had appeared and etc., in reality he was not your attorney.
MS. YURTIS: He was not my attorney.
THE COURT: Right. And I understand that is your position.
Report of Proceedings (RP) at 13. It is clear from the record that the trial court understood that Ms. Yurtis did not believe that Mr. Phipps was her attorney. As such, there is no merit to her claim that the trial court found that she accepted him as her attorney.
¶ 29 Sixth, and finally, Ms. Yurtis is time barred from pursuing such arguments under the relevant statute of limitations.[5] Because Ms. Yurtis's claims against Mr. Phipps are untimely, the trial court did not err by dismissing the action under CR 12(b)(6).
¶ 30 There is no basis for Ms. Yurtis's current complaint and, on appeal, Ms. Yurtis offers no authority or argument for reversal. Rather, Ms. Yurtis continues to revisit the merits of her initial appeal of the 1993 summary judgment. The trial court did not err by granting Mr. Phipps's motion to dismiss because Ms. Yurtis's complaint fails to state a claim upon which relief can be granted.
¶ 31 Injunction Against Further Litigation. While this court appreciates the need for appellate review, "we also are mindful of the need for judicial finality and the potential for abuse of this revered system by those who would flood the courts with repetitive, frivolous claims which already have been adjudicated at least once." In re Pers. Restraint of LaLande, 30 Wash.App. 402, 405, 634 P.2d 895 (1981). In Washington, every court of justice has inherent power to control the conduct of litigants who impede the orderly conduct of proceedings. RCW 2.28.010(3); In re Marriage of Lilly, 75 Wash.App. 715, 720, 880 P.2d 40 (1994). Accordingly, a court may, in its discretion, place reasonable restrictions on any litigant who abuses the judicial process. In re Marriage of Giordano, 57 Wash.App. 74, 78, 787 P.2d 51 (1990).
¶ 32 It has been established that in Washington trial courts have the authority to enjoin a party from engaging in litigation upon a "specific and detailed showing of a pattern of abusive and frivolous litigation." Whatcom County v. Kane, 31 Wash.App. 250, 253, 640 P.2d 1075 (1981). However, proof of mere litigiousness is insufficient. Id. When issuing an injunction, the trial court "must be careful not to issue a more comprehensive injunction than is necessary to remedy proven abuses, and if appropriate the court should consider less drastic remedies." Id.
¶ 33 Further, in Giordano, the court found "compelling authority for injunctive relief against vexatious pro se litigation." Giordano, 57 Wash.App. at 78 n. 1, 787 P.2d 51 (citing People v. Carter, 678 F.Supp. 1484 (D.Colo.1986)). In Giordano, the trial court imposed a restraining order and issued a four-month moratorium on motions in the case. Id. at 75, 787 P.2d 51. On appeal, Ms. Giordano argued that she was denied her right of access to the courts. Id. at 76, 787 P.2d 51. In that case, the trial court imposed the limited moratorium barring further motions until trial because the parties had been "unduly litigious" and the excessive *857 number of motions was a burden on the court. Id. Ultimately, the Court of Appeals upheld the moratorium, finding no abuse of discretion, but noted that the moratorium did not amount to a total denial of judicial access. Id. at 78, 787 P.2d 51.
¶ 34 Importantly, the Giordano court also discussed the constitutional right of access to the courts. Id. at 77, 787 P.2d 51. Significantly, the court recognized that an individual does not have an absolute and unlimited constitutional right of access to the court system. Id. (quoting Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 554 (3d Cir.1985)). Rather, due process requires only that the individual be afforded a reasonable right of access, or a meaningful opportunity to be heard, absent an overriding state interest. Giordano, 57 Wash.App. at 77, 787 P.2d 51 (quoting Boddie v. Connecticut, 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Consequently, when access to the courts is not essential to advance a fundamental right, access may be regulated if the regulation rationally serves a legitimate end. Giordano, 57 Wash.App. at 77, 787 P.2d 51.
¶ 35 The opportunity for judicial access required in any particular case depends on the nature of the case and practical limitations. Id. (quoting Boddie, 401 U.S. at 378-79, 91 S.Ct. 780). An implicit requirement of access to the court system is that the litigation must proceed in good faith and comply with the court rules. Giordano, 57 Wash. App. at 77, 787 P.2d 51; Carter, 678 F.Supp. at 1486.
¶ 36 In the present case, Ms. Yurtis states in her amended brief on appeal:
I took every opportunity I saw available to litigate the issue, now for the first time raised by the Court of Appeals commissioner in the decision terminating review, that Mr. Phipps was my attorney. I motioned, twice, to recall the mandate which had relied on the erroneous Court of Appeals conclusion that Mr. Phipps was my attorney. My attempts to litigate the issue through Motions to Recall the Mandate proved futile to the point of getting sanctions imposed against me by the Supreme Court.

In 2004 I attempted to litigate from a new angle the issue for the first time raised by the Court of Appeals commissioner in the 1997 decision terminating review, and filed a Complaint pursuant to CR 60(c) requesting relief from the 1997 termination of review of the 1993 summary dismissal of my claim against Mr. Phipps. Amended Br. of Appellant at 11 (second emphasis added). Ms. Yurtis acknowledges that "[t]he present lawsuit is my fourth attempt to petition for redress of the Court of Appeals conclusion that Mr. Phipps was my attorney." Reply Br. of Appellant at 3.
¶ 37 Here, this court has already considered and rejected the same claims Ms. Yurtis raises on appeal. This court issued a mandate terminating review of the issue in 1998 and has since denied Ms. Yurtis's motions to recall the mandate. Further, the Supreme Court has denied each of Ms. Yurtis's petitions for discretionary review. On each of those occasions, the court found that Ms. Yurtis's "ceaseless" pursuit of this litigation was not only frivolous, but also abusive and grounds for sanctions. CP at 142.
¶ 38 The current action is yet another attempt by Ms. Yurtis to revisit the 1991 land transaction and Mr. Phipps's role in it. Despite the fact that the courts have repeatedly rejected her claims, she continues to pursue them, undeterred by prior sanctions. On January 27, 2005, the trial court granted Mr. Phipps's motion to dismiss Ms. Yurtis's complaint and imposed sanctions. Ms. Yurtis was explicitly told by the court that "there is no merit to what you are doing" and was advised to "bring an end to this litigation."[6] *858 Following this exchange, Mr. Phipps offered to waive all sanctions and attorney fees in exchange for her entering into an order forever barring future litigation against Mr. Phipps. Ms. Yurtis refused the offer and filed this appeal the same day the trial court withdrew the order not to accept her notice of appeal.
This court now prohibits Ms. Yurtis from filing any appeals or further claims against Mr. Phipps arising out of the 1991 land transaction. In light of the fact that any applicable statute of limitations has passed, Ms. Yurtis cannot be prejudiced by this order.
¶ 39 Attorney Fees and Costs as Sanctions under RAP 18.9. RAP 18.9(a) authorizes the appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party. Rhinehart v. Seattle Times, Inc., 59 Wash.App. 332, 342, 798 P.2d 1155 (1990).
¶ 40 Here, Mr. Phipps seeks an award of attorney fees and costs, as well as the imposition of sanctions against Ms. Yurtis, pursuant to RAP 18.9, arguing that Ms. Yurtis's appeal is frivolous. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wash.App. 899, 906, 151 P.3d 219 (2007), review denied, 162 Wash.2d 1009, 175 P.3d 1092 (2008). "A frivolous action is one that cannot be supported by any rational argument on the law or facts." Rhinehart, 59 Wash.App. at 340, 798 P.2d 1155.
¶ 41 As noted above, the issues presented by Ms. Yurtis in this appeal are without merit. Ms. Yurtis's complaint was filed as part of her fourth attempt to review the 1997 commissioner's ruling. The issues in this case have been raised and rejected on three prior occasions. The case is so devoid of merit that there was no reasonable possibility of Ms. Yurtis's success. Therefore, this appeal is frivolous and RAP 18.9(a) sanctions are ordered against Ms. Yurtis in favor of Mr. Phipps.
¶ 42 The trial court did not err by granting the motion to dismiss and motion for sanctions. We award attorney fees and costs to Mr. Phipps. We also impose sanctions of $2,500 to be paid to Mr. Phipps by Ms. Yurtis. Finally, we prohibit Ms. Yurtis from filing any further actions or appeals related to the 1991 real estate purchase and sale agreement.
WE CONCUR: SWEENEY, C.J., and BROWN, J.
NOTES
[1] There was also a series of motions related to the commissioner's award of attorney fees to Mr. Phipps. Ms. Yurtis filed a motion to modify the attorney fees award and a petition for review, but both were denied in mid-1998.
[2] CP at 147-48.
[3] CP at 149.
[4] Ms. Yurtis's belief that the factual issues were resolved by inferring that Mr. Phipps was her former attorney seem to be rooted in the commissioner's 1997 ruling in which he stated, "Ms. Yurtis sued her former attorney" and Ms. Yurtis "contends that her former attorney . . . wrongfully closed the transaction." CP at 180-81.

It should be noted that this court reads the commissioner's referral to Mr. Phipps as Ms. Yurtis's former attorney as being irrelevant to the ruling. Whether the commissioner referred to Mr. Phipps as Ms. Yurtis's former attorney or her former closing attorney is irrelevant to the issue  his conduct during the closing of the 1991 land transaction. There is ample evidence in the record to show that Mr. Phipps was, in fact, the closing attorney in the 1991 land transaction.
[5] An action upon a contract in writing, or liability express or implied arising out of a written agreement, must be commenced within six years. RCW 4.16.040(1); Safeco Ins. Co. v. Barcom, 112 Wash.2d 575, 580, 773 P.2d 56 (1989).
[6] THE COURT: . . . I just don't see where your argument has any merit even on its own terms. . . . But there is no merit to what you are doing. And I guess the best advice I could give you is to put this aside and go on with your life. . . . [T]he point I'm trying to make with you is you have to leave well enough alone. And you have to bring an end to this litigation.

RP at 13-14.
THE COURT: . . . I read your complaint. I looked for a cause of action there and I couldn't find one.
. . . .
. . . [W]hen I read the complaint and the history of this case, put it in context, I don't see a cause of action. . . . And Ms. Yurtis, I do want to  and I mean this in the best way possible  urge you to not file any further cases because it's expensive to you and it'll serve you no purpose. Now if you have an unrelated cause of action or problem and somebody has wronged you, that's another matter entirely. But this case now has gone on for over ten years. And there has to be an end to it and you're only digging yourself in deeper. I hope you see that as this matter goes on.
RP at 15-16.