# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Guardianship of: ELLA NORA DENNY, an incapacitated person. | DIVISION ONE |
| | No. 70312-9-1 (consol. with No. 70610-1-I) |
| RICHARD DENNY and THOMAS ANDERSON, | |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| OHANA FIDUCIARY CORPORATION, FULL GUARDIAN OF THE ESTATE AND LIMITED GUARDIAN OF THE PERSON OF ELLA NORA DENNY, | |
| Respondent. | FILED: August 1, 2016 |

DWYER, J. — This is the second appeal from proceedings in the management of the limited guardianship of Ella Nora Denny. The appellants, one purporting to act as Mrs. Denny's "next friend," raise several issues related to the guardianship court's approval of the guardian's third annual report and related orders. Finding no error in the superior court's continued management of Mrs. Denny's guardianship or its supervision of the appointed guardian, we affirm.

I

The circumstances supporting the establishment of Mrs. Denny's limited guardianship in 2009 and what transpired in the guardianship prior to the events underlying this appeal are known to the parties and, additionally, are set forth in our opinion from the first appeal in this matter. See In re Guardianship of Denny, No. 69117-1 (consolidated with No. 69610-6-I) (Denny I).

This appeal concerns three orders entered by the superior court. The April 1, 2013 order approved the third annual report of the guardian, Ohana Fiduciary Corporation. The May 23, 2013 order denied Richard Denny's[1] motion for reconsideration of the April 1, 2013 order and awarded attorney fees to the guardianship estate, payment of which was assessed as Richard's responsibility. The June 26, 2013 order approved the amount of attorney fees requested by Ohana and granted Ohana's request to restrict Richard from filing new pleadings until he paid outstanding attorney fee judgments he owed the guardianship estate.

*The Guardian's Third Annual Report is Approved*

On April 1, 2013, the superior court convened a hearing to consider Ohana's third annual report, which covered the period January 1, 2012 through December 31, 2012. The superior court considered over 300 pages of documentary evidence and competing arguments from three attorneys—one each for Richard, Marianne Zak (Mrs. Denny's daughter), and Ohana.

The issues addressed at the April 1, 2013 hearing included:

---

[1] Richard Denny is referred to by his first name to avoid confusion. He is Mrs. Denny's son.

1. *Guardianship Court's Authority.* Richard orally objected to the superior court's ruling on the third annual report when issues relating to the second annual report were on appeal. The superior court overruled Richard's objection, ruling that it had ongoing authority over Mrs. Denny's guardianship and that approval of the third annual report did not affect the issues on appeal.

2. *Caregiver Budget.* Richard objected to a live-in companion caregiver for Mrs. Denny being paid for by the guardianship estate. The superior court overruled Richard's objection based on Mrs. Denny's documented needs.

3. *$100,000.00 Bond.* Richard requested that the superior court consider whether Ohana's $100,000 bond was adequate in light of the fact it managed the checking account for Denny Resources LLC (DR LLC) and made aggregate distributions from the LLC to Mrs. Denny totaling approximately $333,000 in 2012, as reflected in the guardian's annual report. The superior court approved Ohana's management of DR LLC and distribution of LLC income in 2012. The superior court found that the $100,000 bond was adequate.

4. *Estate Planning Attorney Fees.* Richard objected to the fees requested by attorney Timothy Austin for estate planning services rendered to Mrs. Denny. The superior court approved the fees.

5. *Accusations Against Marianne.* Richard objected to Ohana's decision not to pursue a protection order against his sister, Marianne, after Mrs. Denny tested positive for cocaine in December 2012. The superior court concluded that Ohana's response was appropriate and that the guardian properly addressed the risk to Mrs. Denny by hiring a 24-hour live-in caregiver.

6. *Marianne's Request to Sanction Richard.* Marianne requested that the superior court sanction Richard for accusing her of wrongdoing without an evidentiary basis. The superior court declined to impose sanctions but warned Richard's attorney not to file pleadings without conducting a reasonable investigation.

7. *Request for Discovery.* Richard's attorney asked permission to conduct discovery. The superior court denied the request, finding "[t]here is nothing here that warrants a trial."

8. *Conflict of Interest.* Richard requested that the superior court remove Ohana's attorney, Thomas Keller, because of an alleged conflict of interest.[2] The superior court denied this request, finding there to be no conflict of interest.

9. *Counsel for Mrs. Denny.* Richard objected to the superior court ruling on the third annual report without appointing counsel for Mrs. Denny. The superior court overruled this objection and noted that this was one of the issues on appeal.

After considering the documentary evidence and competing arguments at the April 1, 2013 hearing, the superior court entered the "Order Approving Third Annual Report of Limited Guardian of the Person and Full Guardian of the Estate and Authorizing Payment of Fees, Costs and Other Expenses."[3]

Richard moved for reconsideration of the April 1, 2013 order, asserting that the superior court lacked authority under RAP 7.2 to rule on Ohana's third

---

[2] Richard had previously made the same allegation only to withdraw it. On June 6, 2012, Richard represented to the superior court through his attorney: "Richard withdraws the objection that Mr. Keller or [Ohana] have a conflict of interest."

[3] The superior court incorporated its oral ruling into the written order entered April 1, 2013.

annual report due to the pendency of the first appeal (Denny I). Ohana filed a response at the request of the superior court. Marianne responded separately that Richard's "delays and multiple appeals are not in the best interest of Ella Nora Denny" and expressed "grave concerns about the extent to which he may be manipulating and influencing their mother."

The superior court denied the motion for reconsideration and ordered Richard to reimburse the guardianship estate for the attorney fees incurred responding to his motion. The superior court made 17 additional unchallenged findings of fact in support of its ruling, including that

> [t]here was a lack of candor to the Court in the failure to disclose the Court of Appeals Notation Ruling.[4] There was a lack of diligence in arguing that the April 1, 2013 Order changed the March 29, 2012 Order. The Motion to Reconsider review of the Guardian's Third Annual Report was not in Mrs. Denny's best interests, as the role of the Superior Court is to oversee the Guardian's conduct.

*The Superior Court Ordered Richard to Stop Filing New Pleadings Until He Paid Attorney Fee Judgments Owed to the Guardianship Estate*

On June 26, 2013, the superior court conducted a hearing to consider Ohana's petition to approve the amount of its fees and to prohibit Richard from filing additional pleadings in the guardianship until he paid the outstanding attorney fee judgments he owed the guardianship estate.

After considering the evidence and competing arguments, the superior court awarded the guardianship estate a judgment of $10,355.98 against Richard, and prohibited Richard from filing any more pleadings until the new

---

[4] The Notation Ruling referred to in the superior court order was our commissioner's notation ruling of March 6, 2013, which stated, in pertinent part: "The guardianship of Ms. Denny is ongoing, and the trial court will continue to enter orders."

judgment of $10,355.98 and prior judgment of $9,338.44 were paid.

II

A preliminary matter in this appeal is what to make of briefs filed in Mrs. Denny's name by Thomas Anderson, who purports to be acting as Mrs. Denny's "next friend."

Anderson is the son of Mrs. Denny's brother, Martin Anderson, from whom Mrs. Denny wished to keep information about her guardianship. Anderson first attempted to involve himself in the ongoing management of Mrs. Denny's guardianship in April 2012. At that time, he filed with the guardianship court, inter alia, a motion to modify Mrs. Denny's guardianship and replace Ohana as guardian. The guardianship court dismissed Anderson's motion without a hearing and awarded Ohana reasonable attorney fees (assessed against Anderson) for its related efforts. The court also ordered Anderson to post a nonresident security bond. Anderson never posted a security bond but, nevertheless, continued for some time to file pleadings in the guardianship case. However, Anderson was not a party to any of the orders herein on appeal.

In the first appeal in this case, we concluded that Anderson's motion to modify the guardianship, which was the only potential basis for his involvement in the ongoing guardianship proceedings, was properly dismissed. Having so concluded, and without any separate argument from Anderson as to why he should nevertheless have been permitted to act as Mrs. Denny's next friend on appeal, we declined to address the other issues that Anderson attempted to raise in that case as Mrs. Denny's "next friend."

As in Denny I, Anderson offers us no argument regarding why he is entitled to act as Mrs. Denny's "next friend" on appeal. Rather, he simply declares himself to be acting in that position in briefs that he filed in her name. We, once again, reject Anderson's unsolicited and improper attempt to involve himself in the ongoing guardianship of Mrs. Denny and decline to address the issues that he attempts to raise herein.

III

In his second assignment of error,[5] Richard contends that "[t]he superior court erred by entering the April 1, 2013 order contrary to RAP 7.2(a)." This is so, he asserts, because his appeal in Denny I divested the guardianship court of authority to enter further orders. We disagree.

RAP 7.2(a) provides, in pertinent part, that after review is accepted, "the trial court has authority to act in a case only to the extent provided in this rule." Subsections (c)-(l) of the same rule identify circumstances in which a trial court may enter rulings after appellate review has been accepted. At least one of these subsections authorizes each of the superior court's challenged rulings.

First, pursuant to RAP 7.2(e), the superior court has authority to hear and determine "postjudgment motions authorized by the civil rules, the criminal rules, or statutes." Herein, consideration of the petition to approve Ohana's third annual report was authorized by RAP 7.2(e) because Ohana's petition was a postjudgment motion *required*—not simply authorized—by statute, specifically the mandatory annual review process for guardianships. See RCW 11.92.040(2)

---

[5] Richard's first assignment of error is addressed below.

(review for guardianships of the estate); RCW 11.92.043(2) (review for guardianships of the person). While the cited rule requires the permission of the appellate court prior to the entry of a trial court decision that will change a decision being reviewed by the appellate court, not even Richard argues that the April 1, 2013 order changed any of the orders that were on appeal at the time.

Second, pursuant to RAP 7.2(i), "[t]he trial court has authority to act on claims for attorney fees, costs and litigation expenses." The portion of the April 1, 2013 order that approved Ohana's attorney fees, costs, and litigation expenses fell within RAP 7.2(i).

Third, pursuant to RAP 7.2(l), "the trial court retains full authority to act in the portion of the case that is not being reviewed by the appellate court." The April 1, 2013 order was permissible under RAP 7.2(l) because it concerned the latest annual reports required by RCW 11.92.040(2) and .043(2), not the prior annual reports that were subject to appeal. Accord Town of Ruston v. Wingard, 70 Wn.2d 388, 390, 423 P.2d 543 (1967) (appeal from order finding defendant in contempt for violating a permanent injunction did not divest trial court of authority to enter later order to show cause after subsequent act of contempt).

In short, for the various reasons set forth above, the superior court's order did not violate RAP 7.2.

Indeed, the superior court was acting as required. By statute, guardians are "at all times . . . under the general direction and control of the court making the appointment." RCW 11.92.010. The Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act, chapter 11.90 RCW, provides that "a

- 8 -

court that has appointed a guardian or issued a protective order consistent with this chapter has exclusive and continuing jurisdiction over the proceeding until it is terminated by the court or the appointment or order expires by its own terms." RCW 11.90.240; accord In re Guardianship of Gaddis, 12 Wn.2d 114, 125, 120 P.2d 849 (1942) ("[A] superior court which has once properly acquired jurisdiction over the administration of an incompetent's estate cannot divest itself of that jurisdiction until such time as the conditions requiring the guardianship have ceased.").

This is consistent with the constitutional role of the superior court to act as the "superior guardian" and protect the person and estate of incapacitated persons. In re Guardianship of Lamb, 173 Wn.2d 173, 184, 190, 265 P.3d 876 (2011); In re Guardianship of Decker, 188 Wn. App. 429, 451, 353 P.3d 669, review denied, 184 Wn.2d 1015 (2015). By contrast, the Court of Appeals' constitutional role is to review the decisions made by the lower courts, not to replace them as factfinders. See WASH. CONST. art. IV §30(3); RCW 2.06.030; RAP 1.1(a).

Contrary to Richard's contention, it was proper for the superior court to continue managing Mrs. Denny's guardianship even after Richard initiated an appeal from several of its earlier orders.

IV

Richard's first assignment of error asserts that "[t]he superior court erred in ruling concerning the rights retained by Ms. Denny in its 2009 order without

- 9 -

allowing her to retain counsel to advocate on her behalf."[6] We disagree.

Washington's guardianship statutes, which are designed to comply with the requirements of due process, guarantee counsel for persons who are alleged to be incapacitated and for persons already subject to a guardianship when "the rights and interests of . . . [the] adjudicated incapacitated person cannot otherwise be adequately protected and represented." RCW 11.88.045(1)(a). The right to counsel after an adjudication of incapacity also exists where fundamental liberty interests are at stake such as commitment to an institution, electroshock therapy, psychosurgery, or psychiatric procedures that restrict freedom of movement. See RCW 11.92.043(5).[7]

The April 1, 2013 order did not involve any issues that implicated the right to appointed counsel. The order pertained to a routine annual report under RCW 11.92.040(2) and .043(2). Neither Washington's guardianship statutes nor due process require the appointment of counsel for such an occasion. The superior court's approval of the third annual report did not deprive Mrs. Denny of constitutionally-protected liberty or property interests. Ohana did not request or receive any expansion of its authority or any restriction of Mrs. Denny's retained rights, and the order maintained the status quo in the guardianship that had been established in 2009.

---

[6] Richard asserted essentially the same claim in Denny I. It is, therefore, addressed in a somewhat abridged manner herein.

[7] See also In re Guardianship of Hayes, 93 Wn.2d 228, 234, 608 P.2d 635 (1980) (requiring independent guardian ad litem before superior court may grant a petition for sterilization based on the "fundamental right to procreate"); In re Guardianship of K.M., 62 Wn. App. 811, 817, 816 P.2d 71 (1991) (independent counsel required because of the "gravity and finality of an authorization to sterilize"); and In re Guardianship of Ingram, 102 Wn.2d 827, 689 P.2d 1363 (1984) (independent counsel appointed where the guardian sought authority to remove the ward's larynx).

Nevertheless, Richard contends that, because Mrs. Denny was permitted to engage Austin for matters related to the distribution of her estate, she should have been given independent counsel in the guardianship. However, the exception permitting Mrs. Denny to retain court-approved counsel for estate planning services was included in the order establishing her guardianship in 2009.

When the guardianship was established, the superior court limited Mrs. Denny's right to engage counsel. Among the restrictions imposed on Mrs. Denny in the 2009 order was termination of her right to enter into a contract and "to sue or be sued other than through a guardian." Notwithstanding the general prohibition on her right to contract, the 2009 order expressly preserved Mrs. Denny's right to engage in estate planning with Austin, her longtime attorney for such matters. In 2012, Mrs. Denny's cognitive functioning was reevaluated, and she was found to be more impaired than when the guardianship was established. Thereafter, the superior court reaffirmed that Mrs. Denny did not have the capacity to engage counsel, except for the previously authorized estate planning purposes. To change this provision of the guardianship order, Richard was required to file a petition to modify the guardianship under RCW 11.88.120, which he did not do, in anticipation of the third annual report.

The superior court did not err by approving the third annual report without appointing counsel for Mrs. Denny.

V

In his third assignment of error, Richard contends that "[t]he superior court

- 11 -

erred by ruling that Denny Resources LLC is not a guardianship asset." He also contends that the superior court should have considered that Ohana manages the DR LLC checking account in reviewing the adequacy of the $100,000 bond. We disagree on both accounts.

Facts specific to this issue:

*Guardianship Bond and Unblocked Accounts*

Ohana maintains several unblocked accounts related to Mrs. Denny's guardianship. In August 2012, Ohana petitioned to transfer the balance of two blocked accounts into an unblocked account for the payment of taxes, attorney fees, and other expenses. The superior court approved this request without opposition after notice to Richard. As of December 31, 2012, Ohana held $73,686.85 in unblocked accounts for Mrs. Denny.

Ohana's bond has been $100,000 since the guardianship was established in 2009.

*DR LLC*

Prior to the guardianship, Mrs. Denny owned three apartment buildings that she transferred into three separate limited liability companies, LLC A, LLC B and LLC C, one LLC for each property. These three LLCs are owned by a fourth LLC, DR LLC, which was also created by Mrs. Denny prior to the guardianship.

DR LLC has 14 million membership units, composed of 140,000 "A" units that have voting rights, and 13,860,000 "B" units that have no voting rights. Mrs. Denny once owned all 14 million units but, prior to the guardianship, she gave 500,000 "B" units to the Ella Nora Denny Family Trust (the Trust). Also prior to

the guardianship, Mrs. Denny sold another 4,500,000 "B" units to the Trust in exchange for a $4,500,000 promissory note.

The Trust is an irrevocable trust, and Mrs. Denny's children, Richard and Marianne, are the co-trustees. The order that appointed Ohana guardian in 2009 expressly stated that assets of the trusts are not part of the guardianship estate.

On January 4, 2012, Mrs. Denny executed an assignment whereby the DR LLC promissory note was gifted back to the Trust. Mrs. Denny's ownership share of the DR LLC units was and remained at the time of the third annual report 64.29 percent. The Trust owned the other 35.71 percent of the DR LLC units, which were outside the scope of Mrs. Denny's guardianship.

*DR LLC Income Reported to the Superior Court*

From the date of its appointment through 2011, Ohana collected all of the income from DR LLC and reported that income to the superior court.[8] These reports were approved by the superior court after notice to Mrs. Denny's children, including Richard. With the express approval of the superior court, all of the LLC income was paid to the guardianship estate, even though Mrs. Denny owned only 64.29 percent of the units, in lieu of interest payments on the promissory note. Beginning in January 2012, when the promissory note was gifted back to the Trust, the Trust's share of the DR LLC income was distributed to the trustees of the Trust (Richard and Marianne), rather than to Mrs. Denny's guardianship estate.

Ohana, as full guardian of Mrs. Denny's estate, which owned 64.29

---

[8] These reports included the initial inventory report, the interim report, the first annual report, and the second annual report.

percent of the outstanding units of DR LLC, appointed itself to manage DR LLC. Contrary to Richard's assertion that his "written objections and his counsel's arguments . . . alerted the superior court that [Ohana] had appointed itself manager of Denny Resources LLC," Br. of Appellant (Richard Denny) at 15, Ohana reported this election, along with the functions performed by Ohana as LLC manager, to the superior court in 2012 and again in the third annual report filed in 2013. Ohana's management of the DR LLC and distribution of the DR LLC income were expressly approved by the superior court in the order approving the second annual report (which was on appeal in Denny I).

As manager of the DR LLC, Ohana maintains an LLC bank account, receives the rent distributions from the property management company, pays LLC administrative fees, and makes distributions from the LLC bank account to the Trust and to Mrs. Denny's guardianship account. Because Mrs. Denny continues to own 64.29 percent of DR LLC, Ohana transfers that percentage of the cash out of the DR LLC account to the guardianship operating account each month. Because the Trust (managed by Richard and Marianne outside the guardianship) owns the other 35.71 percent of DR LLC, Ohana takes the Trust's 35.71 percent share of the DR LLC cash and divides it evenly between Richard and Marianne, payable to them as the co-trustees.

The total funds distributed in this manner from the DR LLC to the guardianship estate between January 1, 2012 and December 31, 2012 was $333,330.96. This total was reported to the superior court in the third annual report, as well as anticipated distributions for 2013. Distributions from the DR

LLC were used along with Mrs. Denny's other monthly income to pay her substantial expenses.

At the end of 2012, there was approximately $51,000 in undistributed income in the DR LLC account, of which 64.29 percent, or approximately $32,788, was Mrs. Denny's share. The other 35.71 percent of the undistributed income, totaling approximately $18,212, belonged to the Trust, was not subject to the superior court's oversight or the guardianship bond, and was subject to the control and protection of the co-trustees, Richard and Marianne. The total of the unblocked guardianship accounts totaled $73,686.85 as of December 31, 2012. Thus, the total of the unblocked guardianship accounts, combined with Mrs. Denny's share of the DR LLC account, was approximately $106,475.85. The superior court found that the guardian's $100,000 bond was adequate to protect against the guardian's defalcation with regard to these funds.

A

Richard first contends that the superior court erred by ruling that DR LLC is not a guardianship asset.

"A limited liability company is a statutory business structure that is like a corporation in that members of the company are generally not personally liable for the debts or obligations of the company and like a partnership in that it can be classified as a partnership for tax purposes and therefore avoid double taxation." Chadwick Farms Owners Ass'n v. FHC, LLC, 166 Wn.2d 178, 186-87, 207 P.3d 1251 (2009) (internal quotations marks omitted). Limited liability companies are "entirely creatures of statute." Chadwick, 166 Wn.2d at 187. The Washington

Limited Liability Company Act defines members' ownership interests as follows:

> The only interest of a member that is transferable is the member's transferable interest. A transferable interest is personal property. *A member has no interest in specific limited liability company property.*

RCW 25.15.246(1) (emphasis added). The Act defines "transferable interest" as "a member's or transferee's right to receive distributions of the limited liability company's assets." RCW 25.15.006(19).

Mrs. Denny's ownership of 64.29 percent of the DR LLC units gives her a transferable interest in the company—namely, a right to receive 64.29 percent of DR LLC distributions. However, Mrs. Denny's ownership of units and associated rights did not convert the corporation into a guardianship asset.

The superior court correctly ruled that the DR LLC is not a guardianship asset.

B

Richard also argues that the superior court erred by failing to consider the funds Ohana distributed as manager of the DR LLC, including the funds distributed to the trust administered by Richard and Marianne, in setting Ohana's bond amount. We disagree.

The guardianship bond operates as collateral security for the proper discharge of the duties imposed on the guardian by statute. Dickman v. Strobach, 26 Wash. 558, 560, 67 P. 224 (1901). RCW 11.88.100 provides, in relevant part:

> Before letters of guardianship are issued, each guardian or limited guardian shall . . . , unless dispensed with by order of the court as provided in RCW 11.88.105, file a bond . . . in such sum as the

> court may fix, *taking into account the character of the assets on hand or anticipated and the income to be received and disbursements to be made.*

(Emphasis added.) The guardianship bond may be dispensed with, or reduced, to the extent that liquid assets and securities are in blocked accounts, RCW 11.88.105, or if the assets of the guardianship estate are valued at less than $3,000. RCW 11.88.100; accord In re Estate of Treadwell v. Wright, 115 Wn. App. 238, 249, 61 P.3d 1214 (2003).

Ohana's guardianship bond was originally set at $100,000. It was not reduced despite the fact that income distributions to Mrs. Denny declined with the court-approved gift of the LLC promissory note to her children's Trust. In support of prior annual reports, Ohana presented substantial information about DR LLC and Ohana's role as manager, which also never resulted in any change to the original $100,000 bond. In 2013, at the request of Richard, the superior court again reviewed the adequacy of the $100,000 bond. After considering and evaluating Richard's concerns about Ohana serving as LLC manager, the superior court found that the $100,000 bond remained adequate to protect Mrs. Denny's interests. Richard did not assign error to this finding, which was, in any event, supported by substantial evidence.

As explained above, the nature of Mrs. Denny's interest in the DR LLC is the right to receive 64.29 percent of the DR LLC distributions, not a 64.29 percent ownership interest in the real property assets of the LLC. Richard improperly conflates the two when he argues that "Ms. Denny's 64% has a market value of nearly $6.5 million." Br. of Appellant (Richard Denny) at 15.

Mrs. Denny's share of the undistributed DR LLC account, coupled with the unblocked guardianship accounts, represents the unblocked "assets on hand." These totaled $106,475.85. Under these facts, the superior court did not err in finding the $100,000 bond adequate, "taking into account the character of the assets on hand or anticipated and the income to be received and disbursements to be made." RCW 11.88.100.

## VI

Richard's fourth assignment of error states that "[t]he superior court erred in approving [Ohana]'s failure to report to the court material events concerning Ms. Denny's welfare." Br. of Appellant (Richard Denny) at 2. Richard's complaints are not properly before this court because he fails to assign error to any of the superior court's findings of fact, contrary to RAP 10.3(g), fails to provide a "separate concise statement" of each claimed error by the trial court, contrary to RAP 10.3(a)(4), and fails to provide this court with any legal authority to support his arguments, contrary to RAP 10.3(a)(6). "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'" State v. Logan, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). We decline to further address this claim of error.

## VII

In his fifth assignment of error, Richard contends that "[t]he superior court erred in admonishing and threatening Richard's counsel with sanctions for

inquiring about alleged incidents that relate to Ms. Denny's welfare." Br. of Appellant (Richard Denny) at 3. Under the same assignment, he also contends that the court improperly denied his oral request to conduct discovery. We disagree on both accounts.

A trial judge has the authority and the responsibility to control litigants who threaten to impede the orderly conduct of legal proceedings. See CR 11; Yurtis v. Phipps, 143 Wn. App. 680, 693, 181 P.3d 849 (2008); RCW 2.28.010(3).

Herein, Richard asked for authority to conduct discovery in his written objections to Ohana's third annual report. He repeated his request at the April 1, 2013 hearing after, in response to Marianne's motion requesting that he be sanctioned, the court cautioned him about filing materials without conducting reasonable investigation.[9] The superior court denied the request for discovery, finding that "[t]here is nothing here that warrants a trial." When Richard nevertheless repeated the request, the superior court responded:

> This guardianship is proceeding apace as it should, with the exception of the intermeddling of Mr. Denny. And the Court sees absolutely no problem with the progress of the guardianship.

This finding was incorporated into the superior court's written order.

The superior court did not sanction Richard's attorney but, instead, cautioned him not to make further unfounded allegations. Richard does not explain why such a remark is appealable but, in any case, the trial court's admonishment is amply supported by the record.

---

[9] In response to Ohana's petition regarding the drug overdose, Richard filed pleadings accusing his sister of drugging their mother, abusing drugs, cheating on her husband, and wanting their mother to die, which provoked Marianne to request the sanctions against Richard that the superior court denied.

The superior court also did not err in finding that Richard had not established good cause to conduct discovery. Discovery in guardianship cases is governed by RCW 11.96A.115, which provides as follows:

> In all matters governed by this title, discovery shall be permitted only in the following matters:
> (1) A judicial proceeding that places one or more specific issues in controversy that has been commenced under RCW 11.96A.100, in which case discovery shall be conducted in accordance with the superior court civil rules and applicable local rules; or
> (2) A matter in which the court orders that discovery be permitted on a showing of good cause, in which case discovery shall be conducted in accordance with the superior court civil rules and applicable local rules unless otherwise limited by the order of the court.

There is no right to discovery in matters governed by TEDRA[10] unless a judicial proceeding has been filed placing one or more specific issues in controversy. Otherwise, parties must establish good cause to engage in discovery. See In re Estate of Fitzgerald, 172 Wn. App. 437, 447, 294 P.3d 720 (2012) (deferring to trial court's refusal to grant a continuance to conduct discovery in a TEDRA matter).

Substantial evidence supports the trial court's findings that Richard did not establish good cause to conduct discovery. No evidence in the record supported Richard's request to "investigate Ohana's accounts and Ms. Denny's living and care situation." With regard to the LLC's finances, as co-trustee, Richard received monthly reports from the property manager relating to the DR LLC income and distributions. Furthermore, the superior court found no deficiencies with Ohana's annual reports, which were timely filed pursuant to RCW

_____

[10] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW

11.92.040(2) and .043(3), and included information about Mrs. Denny's living and care situation. Moreover, from the record in this case, it is reasonable to infer that, if Richard were authorized to conduct discovery, the cost to Mrs. Denny would be substantial, the superior court and appellate courts would become mired in discovery disputes, and there would be no discernible benefit to Mrs. Denny or her estate.

Richard fails to demonstrate that the superior court erred either by cautioning his attorney or by denying the oral request to conduct discovery. No appellate relief is warranted.

## VIII

Richard's sixth assignment of error states his contention that "[t]he superior court erred by ordering Richard to file no further pleadings with the court until he pays judgments that he has appealed." Br. of Appellant (Richard Denny) at 3. Again, we disagree.

As noted above, superior courts have the "inherent power to control the conduct of litigants who impede the orderly conduct of proceedings." Yurtis, 143 Wn. App. at 693; see also RCW 2.28.010(3). A court, therefore, has discretion to place reasonable restrictions on any party who abuses the judicial process. In re Marriage of Giordano, 57 Wn. App. 74, 78, 787 P.2d 51 (1990) (approving moratorium upon party filing any motions pending resolution of trial).[11]

---

[11] The court in Shutt v. Moore articulated the public policy justification of this authority: "'[J]udicial resources are finite. Time taken to consider frivolous claims is time not available to legitimate litigants. Baseless litigation furthermore burdens the judicial support services. . . . Responsible litigants should not be prejudiced by delays so caused, nor should public treasury bear the costs.'" 26 Wn. App. 450, 456, 613 P.2d 1188 (1980) (quoting Hanson v. Goodwin, 432 F. Supp. 853, 857 (W.D. Wash. 1977)).

"'The welfare of incompetent persons and the care of their property are objects of particular care and attention on the part of the courts.'" Shelley v. Elfstrom, 13 Wn. App. 887, 889, 538 P.2d 149 (1975) (quoting In re Guardianship of Mignerey, 11 Wn.2d 42, 49, 118 P.2d 440 (1941); Potter v. Potter, 35 Wn.2d 788, 215 P.2d 704 (1950)). TEDRA codifies the court's broad powers in guardianship matters to make "any and all manner and kinds of orders . . . that might be considered proper or necessary in the exercise of the jurisdiction or powers given or intended to be given by this title." RCW 11.96A.060.

Herein, the unchallenged findings of fact establish that the guardianship court had ordered Richard to reimburse the guardianship estate $9,338.44 for attorney fees incurred responding to his motion for revision, and that, despite having the ability to pay it, Richard had not paid this judgment at the time the superior court considered the guardian's petition to limit Richard's new court filings. The unchallenged factual findings also establish that Richard's failure to pay the attorney fee judgment harmed Mrs. Denny financially, that Richard's "pleadings ha[d] not raised meritorious issues, and ha[d] not benefitted [Mrs.] Denny." In addition to these findings, the superior court had previously found "a lack of candor to the Court" and a "lack of diligence" by Richard. The superior court also had received multiple requests by Marianne to sanction Richard for false statements in pleadings filed without evidentiary support, and had before it a record showing that Mrs. Denny's guardianship estate had paid more than $71,000 in 2012 for litigation-related attorney fees in response to pleadings filed by Richard and Anderson.

On this record, the superior court ordered as follows:

> This Court has a duty to guard against waste of the ward's assets. Under this Court's plenary authority, as well as RCW 11.96A.020, .040, and .060, the Court concludes that Richard Denny should be prohibited from filing new pleadings in this guardianship until he pays all judgments, plus accrued interest, entered against him in this guardianship, *except for* pleadings relating to any motion for revision of or appeal of this Order or any pending appeal.

The superior court had before it a "specific and detailed showing of a pattern of abusive and frivolous litigation." Whatcom County v. Kane, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981). The superior court did not deny Richard all access to the courts, but conditioned new pleadings on his payment of previously ordered attorney fees and costs.[12] The superior court also expressly exempted motions for revision and appellate pleadings. The superior court did not abuse its discretion in limiting Richard's new pleadings until he paid outstanding attorney fee judgments.

IX

Richard's final contention is that he should be awarded reasonable attorney fees on appeal. Ohana, in turn, contends that it should be awarded reasonable attorney fees relative to both Richard's and Anderson's appeals.

RAP 18.1 permits attorney fees to be awarded on appeal if applicable law grants the party the right to recover reasonable attorney fees. RCW 11.96A.150 permits the appellate courts in guardianship, probate, and trust matters to award attorney fees from any party to any party "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1). In determining

---

[12] This is the same remedy authorized by the Rules of Appellate Procedure when a party fails to pay court-ordered fees. RAP 18.9(a).

whether to award fees under RCW 11.96A.150, we "may consider any and all factors . . . deem[ed] to be relevant and appropriate, such as whether the litigation benefits the estate." <u>Decker</u>, 188 Wn. App. at 451 (awarding guardian attorney fees on appeal against ward's former attorney who sought to "vindicate" her due process rights).

As demonstrated above, the arguments made on appeal by both Richard and Anderson were contrary to established law and, in part, were advanced in a manner that violated the rules of appellate procedure. Furthermore, the ongoing litigation is contrary to Mrs. Denny's best interests and acts as a drain on her estate's resources. Thus, the equities weigh heavily in favor of Ohana's request and against Richard's.

Accordingly, Richard's request for an award reasonable attorney fees is denied. Ohana's request is granted. An award in favor of Ohana and against Richard is appropriate with regard to Ohana's efforts to respond to Richard's briefing. An award in favor of Ohana and against Anderson is appropriate with regard to Ohana's efforts to respond to Anderson's briefing as Mrs. Denny's "next friend". Upon compliance with RAP 18.1, a commissioner of this court will enter appropriate orders.

Affirmed.

We concur:

- 24 -