[No. 25941-5-I. Division One. September 16, 1991.]

*In the Matter of the Guardianship of* K.M.

*Michael B. Bobbink, Patricia S. Woodall* and *Shepherd, Abbott & Woodall,* for appellant.

*Deborra E. Garrett* and *Raas, Johnsen, Garrett & Stuen, P.S.,* for respondent.

BAKER, J. — This case requires us to determine whether the trial court erred in failing to appoint counsel to represent a minor incompetent[1] at a hearing on a petition seeking an order authorizing the guardian to consent to the minor's sterilization.

The parents of K.M., who was 15 years old at the time of trial, petitioned through counsel to be appointed guardians of the person and estate of K.M.,[2] and to be

---

[1] This case was tried prior to the effective date of the 1990 amendments to RCW 11.88, which replaced the term "incompetent" persons with "incapacitated" persons. *See* RCW 11.88.010(1).

[2] The granting of this petition for appointment was not challenged on appeal.

authorized to consent to her sterilization. The trial court appointed a guardian ad litem to represent the best interests of K.M., pursuant to former RCW 11.88.090 (amended 1990). The guardian ad litem appointed was an attorney. There were no appearances by any adversarial party.

Prior to trial, the guardian ad litem submitted a report recommending that no counsel be appointed to represent K.M. and that the petitioners' request for authorization to consent to sterilization be granted.

At the time of the hearing, the trial court asked the guardian ad litem to "act as an independent examiner of any live witnesses that occur". The court then asked the guardian ad litem to clarify the conclusion in her report that the sterilization authorization request was "responsible". The guardian ad litem responded that she believed K.M. would be at risk emotionally were she to get pregnant and thus her recommendation was based on the best interests of K.M.[3]

The evidence indicated that K.M.'s diagnosis is static encephalopathy with developmental or congenital aphasia, a nonprogressive condition that hampers her ability to decipher and express speech. Since the damage occurred at or around the time of birth, there was no preservation of other forms of communication such as writing. Her IQ is 40; she functions at the mental age of a 6- to 7-year-old. K.M.'s independent functioning in various daily activities is severely limited.

K.M.'s mother testified that K.M.'s compliancy and naivety cause her concern that K.M. may engage in sexual activity without the ability to make judgments regarding the consequences. K.M. currently takes birth control pills, but she needs daily monitoring. The guardian ad litem did not cross-examine the mother.

---

[3]The affidavit of guardian ad litem, appended to respondents' brief, which belatedly attempts further to justify her conclusions, is not properly before this court. *See State v. Hughes*, 106 Wn.2d 176, 206, 721 P.2d 902 (1986) (appellate record is limited to verbatim report, clerk's papers and exhibits); RAP 9.1.

Dr. Braun, K.M.'s treating neurologist, testified that K.M. would never be capable of exercising responsible judgment in sexual and reproductive matters or in caring for a child. In his experience, pregnancy of a mentally retarded patient involves marked negative psychological impact on the patient. The guardian ad litem did not cross-examine Dr. Braun.

A counselor who met with K.M. regarding reproductive issues testified that K.M. expressed a desire not to have children because she felt she could not care for them. On cross examination by the guardian ad litem, the counselor testified that she did not know whether K.M. was parroting her parents' views or expressing her own. Although K.M. testified that she understood if she were sterilized she could not have a child, her testimony was ambiguous as to whether she understood the procedure was irreversible.

Dr. Robert Watson, a child and adolescent psychiatrist, testified regarding the negative emotional repercussions of a pregnancy on a person with K.M.'s level of impairment. The guardian ad litem was not present during Dr. Watson's testimony; thus, he was not cross-examined.

The trial court held the evidence was clear, cogent and convincing that it was in the best interests of K.M. that she be sterilized. Her guardians were given authority to consent to the sterilization. However, the trial court withheld that authority pending the appointment of an attorney for K.M. to evaluate the possibility of an appeal and pending any resulting appellate review.

### RIGHT TO COUNSEL

K.M. contends she was denied her right to counsel at trial since the guardian ad litem comported herself in a nonadversarial manner and waived a number of K.M.'s substantial rights. She alleges the guardian ad litem acted improperly by recommending against the appointment of independent counsel, waiving K.M.'s right to be present during portions of the trial, failing to be present herself during portions of the trial, failing to object to absence of notice to K.M., and failing to mail K.M. a copy

of her report as required by former RCW 11.88.090(3)(b) (amended 1990).

Former RCW 11.88.045(1) (amended 1990) provided that alleged incompetents are entitled to independent legal counsel and that

> when, in the opinion of the court, the rights and interests of an alleged or adjudicated incompetent or disabled person cannot otherwise be adequately protected and represented, the court on its own motion shall appoint an attorney at any time to represent such person.[4]

Former RCW 11.88.090(3)(a) (amended 1990) provided that the guardian ad litem had a duty to meet with the alleged incompetent person and explain various legal rights, including the right to independent legal counsel and the right to be present in court at the hearing on the petition. The guardian ad litem is further required to file a written report containing, among other things, a recommendation to the court "as to whether or not counsel should be appointed to represent the alleged incompetent or disabled person, and the reasons for such recommendation." Former RCW 11.88.090(3)(b) (amended 1990). A copy of the report containing the recommendation is to be provided to the alleged incompetent.

No Washington case has explored the nature of the role of the guardian ad litem upon a petition by a parent for authorization to sterilize a minor child. The extent of our State's law on the subject of sterilization of a minor is contained in the case of *In re Hayes*, 93 Wn.2d 228, 608 P.2d 635 (1980), in which the nature of the guardian ad litem's role was not directly at issue.

■ ■ The role of the guardian ad litem has been explored in other contexts, however. For example, in *In re Quesnell*, 83 Wn.2d 224, 517 P.2d 568 (1973), a mental illness civil commitment proceeding, the court held that

> the guardian ad litem is appointed for the benefit of and to protect the rights and best interests of the alleged incom-

---

[4]The current version of RCW 11.88.045 has retained substantively similar language.

petent to whom he is assigned. For these purposes, it is essential that he act as an advocate in behalf of the accused.

(Citations omitted.) *Quesnell*, 83 Wn.2d at 235-36. The court held that it is the duty of the guardian ad litem to submit to the court all relevant defenses or legal claims the client may have, investigate actively any charges, consult meaningfully with the client, and explain the legal consequences of the proceedings. *Quesnell*, 83 Wn.2d at 236-38. If these affirmative efforts to provide protection for the fundamental rights of the alleged incompetent are not observed,

the appointment of the guardian ad litem can become a "mere formality" and a meaningless gesture. The nonadversary guardian ad litem necessarily does not afford realization of constitutional and statutory guarantees in regard to the assistance of counsel.

(Citation omitted.) *Quesnell*, 83 Wn.2d at 236-37.

The *Quesnell* court went on to state that it was of utmost importance, consistent with the guardian ad litem's duty to actively protect the rights of the client, that the guardian ad litem be prohibited from waiving any substantial right of the client. The rationale for this rule, the *Quesnell* court explained, was stated in *Graham v. Graham*, 40 Wn.2d 64, 240 P.2d 564 (1952), a case in which the trial court sought to appoint a guardian ad litem to represent a party defendant. There, the court explained:

There is something fundamental in the matter of a litigant being able to use his personal judgment and intelligence in connection with a lawsuit affecting him, and in not having a guardian's judgment and intelligence substituted relative to the litigation affecting the alleged incompetent.

*Graham*, 40 Wn.2d at 67. This prohibition against waiving any substantial rights of the client exists even if the appointment of the guardian ad litem is made after a hearing and determination of incompetency. *See Quesnell*, 83 Wn.2d at 238 (quoting *In re Houts*, 7 Wn. App. 476, 482, 499 P.2d 1276 (1972)).

 *In re Moe*, 385 Mass. 555, 432 N.E.2d 712 (1982) discussed the role of the guardian ad litem upon a guardian's petition for an order authorizing sterilization. The court held that the guardian ad litem was charged with the responsibility of zealously representing the ward, and must meet with the ward, present proof, cross-examine witnesses, and present all reasonable arguments in favor of the court's denial of the petition, so that all viewpoints will be aggressively pursued and examined. "This adversary posture will ensure that both sides of each issue which the court must consider are thoroughly aired before findings are made and a decision rendered." *Moe*, at 567; *accord, In re C.D.M.*, 627 P.2d 607, 612 (Alaska 1981). Similarly, our Supreme Court in *Hayes* held that in the question of sterilization the parents' interests cannot be presumed to be identical to the child's. *Hayes*, 93 Wn.2d at 236. "It is thus clear that in any proceedings to determine whether an order for steriliza-tion should issue, the retarded person must be repre-sented, as here, by a disinterested guardian ad litem." *Hayes*, 93 Wn.2d at 237.

The guardian ad litem in this case did not assume an adversary posture. Following the submission of her report supporting the petition, the guardian ad litem demon-strated in a number of ways that she regarded her role as nonadversarial. For example, she was not present during the testimony of Dr. Watson, and conducted no cross examination of Dr. Braun or K.M.'s mother.

Furthermore, without objection or comment by the guardian ad litem, the trial court granted petitioners' motion that K.M.'s presence be waived for the second half of the trial, which included the testimony of Drs. Watson and Braun. Waiver of K.M.'s right to be present at the hearing, absent special authorization by K.M., should not have been permitted. *See Quesnell*, 83 Wn.2d at 238-39.

 We are mindful of the gravity and finality of an authorization to sterilize. Justice William O. Douglas stated that the right to procreate is "fundamental to the

very existence and survival of the race. The power to sterilize, if exercised, may have subtle, far-reaching and devastating effects. . . . There is no redemption for the individual whom the law touches. . . . He is forever deprived of a basic liberty." *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541, 86 L. Ed. 1655, 62 S. Ct. 1110, 1113 (1942), *cited in Hayes*, 93 Wn.2d at 234. The decision whether or not to bear a child is at the very heart of the constitutionally protected right to privacy. *See Carey v. Population Servs. Int'l*, 431 U.S. 678, 684-85, 52 L. Ed. 2d 675, 97 S. Ct. 2010, 2016 (1977).

■ Given the fundamental right at issue here and the lack of adversarial testing of the relevant considerations to be weighed, we hold that the trial court erred by failing to appoint independent counsel for K.M. In such a case, independent counsel should be appointed when it becomes apparent to the trial court, either upon review of the guardian ad litem's report or at any point during the hearing, that the appointment is necessary in order to ensure a thorough, adversary exploration of the issues. The trial court's order is reversed and the cause remanded for a new hearing, with counsel appointed to represent K.M.

GROSSE, C.J., and AGID, J., concur.