# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Guardianship of:
ELLA NORA DENNY, an incapacitated person.

RICHARD DENNY and THOMAS ANDERSON,

          Appellants,

          v.

OHANA FIDUCIARY CORPORATION, FULL GUARDIAN OF THE ESTATE AND LIMITED GUARDIAN OF THE PERSON OF ELLA NORA DENNY,

          Respondent.

DIVISION ONE

No. 69117-1
(consol. with No. 69610-6-I)

UNPUBLISHED OPINION

FILED: August 1, 2016

DWYER, J. — This appeal stems from proceedings in the management of the limited guardianship of Ella Nora Denny. The appellants, one purportedly acting as Mrs. Denny's "next friend," raise issues regarding nearly every decision made by the guardianship court since 2012. Finding no error in the superior court's management of the guardianship or its supervision of the guardian, we affirm.

I

*Richard's Petition for Full Guardianship*

In 2009, Richard Denny[1] petitioned for guardianship of his mother, Ella Nora Denny (Mrs. Denny), because Alzheimer's disease had allegedly made her unable to recall signing conflicting legal documents and placed her at risk of undue influence. Richard alleged that Mrs. Denny's incapacity was "moderate" and that she "require[d] full support and assistance in managing her finances [and] moderate assistance in managing health care and residential issues." Richard requested a full guardianship of both the person and estate of Mrs. Denny and desired the appointment of a professional guardian.

Independent counsel Timothy Austin represented Mrs. Denny in responding to the guardianship petition filed by Richard. Mrs. Denny selected Austin because he had previously represented her on other matters. In Mrs. Denny's response to the guardianship petition, she asked to retain the right to engage in estate planning, with Austin assisting her. Mrs. Denny did not ask to retain counsel for any other purpose. Mrs. Denny also requested that no information about the guardianship be shared with her brother Martin Anderson.

*2009 Order Appointing Limited Guardian of the Person and Full Guardian of the Estate*

On December 17, 2009, the King County Superior Court entered an order appointing a limited guardian of Mrs. Denny's person and a full guardian of her estate. Ohana Fiduciary Corporation was appointed as Mrs. Denny's limited guardian.

---

[1] Richard Denny is referred to hereinafter using his first name to avoid confusion.

The order provides: "The powers of the Guardian and the rights retained, limitation and restrictions placed on EllaNora Denny shall be as set forth in Conclusion of Law."

Conclusion of Law 2.1 provides: "EllaNora Denny is an Incapacitated Person within the meaning of RCW Chapter 11.88, and a Full Guardian of the Estate and a Limited Guardian of the Person should be appointed."

Conclusion of Law 2.2 identifies the rights Mrs. Denny retained after the guardianship:

> a. Mrs. Denny shall retain the right to make or revoke a will, trust or other testamentary device under the direction of competent independent counsel. This estate planning may include, but not be limited to, gifting and transfer of interests to a family trust.
> b. Mrs. Denny shall retain the right to consent to or refuse medical treatment, *subject to the conditions set forth herein.*
> c. Mrs. Denny shall retain the right to decide who shall provide care and assistance, *subject to the conditions as set forth herein.*
> d. Mrs. Denny shall retain the right to make decisions regarding the social aspects of her life, *subject to the conditions as set forth herein.*

(Emphasis added.)

Consistent with Mrs. Denny's response to the guardianship petition, the order also expressly terminated Mrs. Denny's right to enter into contracts except in the furtherance of her estate planning through court-appointed counsel:

> a. Mrs. Denny shall have the right to enter into contract provided it is solely under the advice and direction of competent independent counsel and in furtherance of her estate planning. Mrs. Denny shall also have the right to appoint someone to act on her behalf pursuant [sic] provided such appointment is solely in a testamentary devise. *In all other areas, Mrs. Denny shall not have the right to enter into a contract.*
> b. Mrs. Denny shall not have the right to sue or be sued other than through a guardian.

. . . .

> d. Mrs. Denny shall not have the right to buy, sell, mortgage or lease property other than through the guardian.

(Emphasis added.)

Conclusions of Law 2.3, 2.4, 2.5, and 2.6 of the order detail the authority and responsibilities of the guardian, with express reference to the guardianship statute, chapter 11.92 RCW. Ohana received "[a]ll of the powers of a Guardian of the estate pursuant to the provisions of Chapter 11.92 RCW," and "[a]ll of the powers and responsibilities of a Guardian of the person pursuant to the provisions of Chapter 11.92 RCW, limited by the language in this Order."

The order also specified the decision-making standard as follows:

> [T]he guardian shall make reasonable efforts to ascertain EllaNora Denny's stated, current and historic preferences and shall give significant weight to such preferences. When the competent preferences of EllaNora Denny cannot be ascertained, the Guardian is responsible for making decisions which are in EllaNora Denny's best interest. A determination of her best interest shall include consideration of her stated preferences, as well as consultation with Richard Denny and Marianne Zak [Mrs. Denny's daughter].

Richard's attorney prepared and presented the order establishing the guardianship for Mrs. Denny on December 17, 2009. Richard and Mrs. Denny both attended the hearing. No objections were made to entry of the 2009 order.

*Incorrect Letters of Guardianship Issued then Corrected*

For the first 17 months of Mrs. Denny's guardianship, from December 21, 2009 through May 16, 2011, letters of limited guardianship of the person were in effect. These letters were provided to Mrs. Denny's medical providers during that time.

In December 2010, in response to a request from the guardian, the superior court authorized the guardian to involve Mrs. Denny's children in her healthcare as follows:

> The guardian is hereby authorized to allow Ms. Denny to manage her own medical and dental care with the assistance of her children, provided that:
> • The children inform all medical, dental and other care providers that there is a guardianship in place . . .
> • The children inform the guardian of each medical, dental or other health care appointment, in advance of the day of the appointment . . .
> • At the guardian's discretion if any proposed treatment might be detrimental to Ms. Denny's health, the guardian shall retain authority to withhold consent for the treatment; and
> • If the children fail to follow such court direction, the court will entertain an order restraining them from further involvement in their mother's health care.[2]

Soon thereafter, Ohana filed its first "Annual Report and Care Plan," which was approved on March 31, 2011, after notice to Richard and Mrs. Denny. This report correctly identified Ohana as Mrs. Denny's "limited guardianship of the person," and did not request that the superior court change the scope of the limited guardianship. The March 31, 2011 order directed the clerk of the court to reissue Ohana's letters of guardianship. However, by a drafting error of Ohana's attorney, it did not specify that letters of guardianship of the person should be limited.

On June 17, 2011, the letters of guardianship were reissued without specifying that the guardianship of the person was limited. These letters of guardianship remained in effect for just under 10 months, from June 17, 2011

---

[2] Richard designated this order in his notice of appeal, filed in October 2012, almost two years later. Richard also therein designated an order entered March 29, 2012 that "reaffirm[ed]" the court's December 17, 2010 order regarding Mrs. Denny's medical care.

through April 9, 2012. The incorrect letters of guardianship were discovered by Ohana on or about September 22, 2011. Ohana requested that its attorney obtain corrected letters of limited guardianship. As the attorney later explained to the court commissioner,[3] because the error was not discovered "until nine months into the second year," the decision was made to correct the letters at the next annual review, rather than through an interim report and review. The error was corrected in the letters of limited guardianship of the person issued April 9, 2012.

During the 10 months that the incorrect letters of guardianship were in effect, Ohana's actions fell entirely within the scope of the 2009 order. The guardian's billing records for June through December 2011 reflect no significant health care decisions by Ohana, and document the involvement of Mrs. Denny's children in her health care.

*Attorney Mark Wilson Petitions the Superior Court to Appoint Him to Represent Mrs. Denny*

In March 2012, attorney Mark Wilson petitioned the superior court to appoint him to represent Mrs. Denny in responding to the guardian's petition for approval of the second annual report. Mrs. Denny, pro se, filed a companion motion to continue the hearing, two declarations, an ex parte motion to shorten time, and petition for appointment of independent counsel, which appear to have been prepared by Wilson's firm.

In response to the petition to appoint Wilson, the superior court ordered an

---

[3] At a hearing on April 27, 2012, the guardian's attorney explained, and took responsibility for, the drafting error that led to the incorrect letters of guardianship.

updated report from the psychologist who evaluated Mrs. Denny in 2009, Renee Eisenhauer, Ph.D. Dr. Eisenhauer's updated report concluded in pertinent part: "Ms. Denny's cognitive functioning has deteriorated over the last two and a half years. . . . She showed greater confusion and impaired problem solving at her current evaluation than she did at her previous evaluation. Her thinking is presently more disorganized."

As requested in the motion to shorten time signed by Mrs. Denny, the superior court held a hearing on March 23, 2012. Mrs. Denny was confused about why she was in court and asked whether her son was in trouble. Also during the March 23, 2012 hearing, Commissioner Velategui observed that Mrs. Denny did not know who Wilson was, and believed that he was the judge.

Three days before Mrs. Denny signed multiple documents stating that she wanted Wilson to represent her, she had signed a notarized statement, directed to Wilson, which provided:

> I withdraw my authorization for you to act as my attorney.
> You breached your agreement to enter an appearance in my case
> within a retainer of $20,000. You breached your alternate
> agreement to complete a petition to replace the guardian in my
> case within a retainer of $20,000. Having failed to enter an
> appearance or complete a petition to replace the guardian, you
> requested additional funds and charged additional fees.

Mrs. Denny and Richard were present when the superior court ordered the updated evaluation by Dr. Eisenhauer and did not object to the designation of Dr. Eisenhauer or request a different evaluator. Consistent with this, when Dr. Eisenhauer met with Mrs. Denny on April 3, 2012, she reported that Mrs. Denny was "agreeable to the evaluation." However, two weeks *after* consenting to Dr.

Eisenhauer's evaluation, Mrs. Denny signed a document stating, "I do not agree to be evaluated by Dr. Eisenhauer. I will only be evaluated by Dr. Gorman."

After receiving Dr. Eisenhauer's report, Ohana scheduled a hearing on its motion to dismiss Wilson's petition for May 7, 2012. Although the guardian served the hearing notice, motion, and proposed order by mail on all notice parties, including Wilson, Mrs. Denny, and Richard, none of them filed a response to the guardian's motion or appeared at the hearing.

On May 16, 2012, the superior court denied Wilson's petition to be appointed counsel for Mrs. Denny. In unchallenged findings of fact, the superior court determined that Mrs. Denny's dementia-based cognitive impairments had worsened since the guardianship order was entered, and that she remained highly susceptible to undue influence and exploitation by others. The superior court also found that Mrs. Denny lacked the mental capacity to understand whether the influence of others was contrary to her best interests or to understand and remember written documents that she had signed. Finding no credible admissible evidence that Mrs. Denny wished to retain Wilson, or that she needed independent counsel other than for estate planning purposes, and further finding that appointment of additional counsel would require the expenditure of estate assets with no discernible benefit, the superior court denied Wilson's petition.

Richard moved for reconsideration of this order, which was denied on June 19, 2012. The court also ordered Richard to pay the guardian's fees and costs associated with responding to his motion. Richard then filed a motion for

revision, which was denied by Judge Sharon Armstrong on September 7, 2012.

*The Guardian's Second Annual Report is Approved*

The actions undertaken by the guardian between January 1, 2011 and December 31, 2011 were described in its second annual report, dated March 6, 2012. The guardian's report correctly identified Ohana as Mrs. Denny's "limited guardian of the person," and did not request that the court change the scope of the limited guardianship.

The superior court approved the guardian's second annual report by order dated March 29, 2012, after notice to Richard, Mrs. Denny, and other notice parties. Richard did not raise any objections to the report, even though he was given additional time to respond to it. Nevertheless, Richard designated the order as a decision to be reviewed.

*Thomas Anderson Files Pleadings as Mrs. Denny's "Next Friend"*

In April 2012, Thomas Anderson filed numerous pleadings in this guardianship, which asserted his right to speak for Mrs. Denny as her "next friend." Anderson is the son of Mrs. Denny's brother, Martin Anderson, who she requested not receive copies of guardianship pleadings.

On April 9, 2012, Anderson simultaneously filed a motion to reconsider the order approving the second annual report and a motion to revise the same order. He filed these motions even though he had not appeared in opposition to the guardian's petition to approve the report.[4]

On April 10, 2012, Anderson filed a motion entitled "Motions to Replace

---

[4] Anderson's motion was denied on October 22, 2012.

Guardian and Modify Guardianship," in which he requested that the court replace Ohana and disgorge "all fees claimed on th[e] guardianship by attorney Thomas Keller from Sep. 12, 2011 forward," due to the mistaken letters of guardianship. Richard expressly declined to join this motion.

On April 19, 2012, Anderson also filed a motion entitled "Emergency Motion To Enjoin Guardian," which was denied for procedural irregularities the same day that it was filed.[5]

In denying Anderson's motion to replace the guardian, the superior court commissioner ordered him to pay the guardianship estate's reasonable attorney fees of $4,411.50.[6] In addition to the fee award, Anderson, who resides in Oregon, was ordered to post a nonresident plaintiff security bond of $35,000[7] and was prohibited from filing any "motions, petitions, declarations or objections" until posting the bond.[8] The superior court also prohibited Anderson and Richard from procuring Mrs. Denny's signatures on documents or court pleadings relating to the guardianship.[9]

Even though he had not joined Anderson's motion to replace the guardian, Richard filed a motion for revision of the June 19 order. Judge Sharon

---

[5] At a hearing on April 27, 2012, the guardian was permitted to retain additional counsel to respond to the multiple motions filed by Anderson. Anderson also appeals from this order.

[6] Anderson appealed these orders but neither sought a stay of the decisions nor paid the attorney fee judgment.

[7] The amount of the bond was $35,000. Ohana asked for $50,000, but only $35,000 was ordered. The superior court commissioner crossed out $50,000 in the order portion of the decision and inserted $35,000, but neglected to do so in the conclusions of law. The order is nevertheless clear.

[8] Anderson appealed the order requiring him to post bond but neither sought a stay of the decision nor posted the bond.

[9] In violation of the superior court's orders, Anderson filed a Notice of Intent to Move for Sanctions against Ohana, because Ohana refused to provide him with copies of all pleadings filed in the guardianship, including Mrs. Denny's private financial information relating to her estate planning gifts to her children.

Armstrong denied the motion on September 7, 2012 and ordered Richard to pay attorney fees and costs incurred by the guardian.

*Mrs. Denny Tests Positive for Cocaine and Ohana Seeks Instructions from the Court*

In December 2012, Mrs. Denny required emergency medical attention and, without advance notice to Ohana, was administered a drug test. She tested positive for cocaine. Mrs. Denny had no recollection of the events that led to these results. At the Guardian's request, after the positive drug test, Mrs. Denny's children both agreed to temporarily suspend their in-person visits with Mrs. Denny.

In January 2013, Ohana filed a petition for instructions from the superior court related to Mrs. Denny's positive drug test. The petition for instructions requested that the superior court approve unrestricted contact between Mrs. Denny and her children, additional medication monitoring by the staff at Mrs. Denny's assisted living facility, and the hiring of a caregiver.

In response to Ohana's petition, in violation of the superior court's prior order, Anderson filed a document signed by Mrs. Denny entitled "Objection by Ward." Richard filed pleadings accusing his sister Marianne of drugging their mother, abusing drugs, cheating on her husband, and wanting their mother to die. Richard's attorney also filed a declaration that attached unauthenticated medical records of Mrs. Denny, which were obtained without the Guardian's knowledge. For her part, Marianne denied the allegations made against her, submitted polygraph test results, and requested that sanctions be imposed against Richard.

Richard also filed an emergency motion requesting that this court stay the guardianship proceedings until counsel was appointed for Mrs. Denny. This court denied Richard's motion for stay.

The superior court conducted a hearing on the guardian's petition for instructions on January 24, 2013. Although Mrs. Denny received notice of the hearing and the guardian's petition, she did not appear. The superior court entered a written order on the motion, supported by extensive findings and conclusions, the following day. Regarding Mrs. Denny's healthcare, the court confirmed Ohana's authority to hire a caregiver for Mrs. Denny. The court also returned decision-making regarding her healthcare to the guardian's exclusive control, concluding that

> the Guardian should have sole decision-making authority over all aspects of Ella Nora Denny's health care, subject to its duty to consult with Ella Nora Denny . . . [and] that it would be detrimental to Ella Nora Denny at this time for either one of her children to make health care decisions for her, except in an emergency, or to have access to Ella Nora's health care information . . . . The provisions of any prior orders that authorized Mrs. Denny's children to assist with health care decision-making for Mrs. Denny should no longer govern.

The superior court's January 25, 2013 order also addressed whether Mrs. Denny was entitled to engage counsel or have counsel appointed to represent her. The superior court reiterated that, under the 2009 guardianship order, Mrs. Denny retained the right to engage counsel only for estate planning purposes, reiterated its prior findings that she did not have the capacity to reinstate her right to engage counsel, and found that good cause was not established to appoint counsel for Mrs. Denny since her retained rights and welfare were adequately

protected. Finding of Fact 21; Conclusion of Law 3.

The January 25, 2013 order additionally addressed Anderson's standing in the guardianship. Findings of Fact 22-31; Conclusions of Law 8-12. Unchallenged Finding of Fact 29 states that "Anderson's injection of himself in the guardianship of EllaNora Denny has not benefitted Mrs. Denny" and that "his involvement has significantly increased the Guardian's attorney fees, which are paid from Mrs. Denny's funds." This finding supported the court's conclusion that

> Mrs. Denny's interests and retained rights are adequately represented by the Guardian, Mrs. Denny's children, and the superior court overseeing Mrs. Denny's guardianship. Even if Washington courts recognized "next friend" standing in guardianship matters, this Court would not find Thomas Anderson to be an appropriate person for appointment as Mrs. Denny's "next friend."

Anderson did not participate in any proceedings in the superior court subsequent to the January 25, 2013 order.

Before analyzing the merits of the claims properly before us, we address three preliminary issues.

II

One initial issue is the standard of review applicable to decisions by the superior court in managing an ongoing guardianship. Richard and Anderson contend that de novo review is required because only documentary evidence was presented to the superior court. Ohana contends to the contrary, asserting that an abuse of discretion standard applies to rulings made in the type of proceedings herein at issue. Ohana is correct.

"The management of a guardianship by the superior court is reviewed for

abuse of discretion."[10] In re Guardianship of Cornelius, 181 Wn. App. 513, 528, 326 P.3d 718 (2014) (citing In re Guardianship of Johnson, 112 Wn. App. 384, 387-88, 48 P.3d 1029 (2002)). A trial court's decision will not be reversed for abuse of discretion unless it is "'manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons.'" In re Guardianship of Lamb, 173 Wn.2d 173, 189, 265 P.3d 876 (2011) (quoting Noble v. Safe Harbor Family Pres. Trust, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)). "'A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" Lamb, 173 Wn.2d at 189 (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence. Fisher Props., Inc. v. Arden-Mayfair Inc., 115 Wn.2d 364, 369, 798 P.2d 799, 804 P.2d 1262 (1990). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). An appellate court "heavily relies on the trial court's determination of what is in the best interest of the ward." Cornelius, 181 Wn. App. at 536 (citing In re Guardianship of Pawling, 101 Wn.2d 392, 401, 679 P.2d 916 (1984)). A superior court is in a better position to determine factual disputes in a guardianship case because it has a more extended opportunity to consider

[10] Notably, the 2009 order appointing a guardian for Mrs. Denny is not on appeal. The orders on appeal were all entered subsequent to this order in the course of the management of the guardianship.

documentary evidence, hear arguments of and question counsel, and clarify conflicts in the record.[11] In re Marriage of Stern, 68 Wn. App. 922, 928-29, 846 P.2d 1387 (1993).

Accordingly, we apply an abuse of discretion standard to the decisions made by the superior court in the course of its management of the guardianship of Mrs. Denny.

### III

A second initial matter is Anderson's ability to act in the self-appointed role of Mrs. Denny's "next friend." Anderson contends that he was improperly prevented from participating as Mrs. Denny's "next friend" in the guardianship proceedings. We disagree.

Anderson frames his claim as if it presents a legal question regarding a third-party's ability to participate in a guardianship case as "next friend" to the incapacitated person. But, under the facts of this case, no resolution of that issue would entitle Anderson to appellate relief. As Anderson acknowledges, he "moved the trial court in both his individual capacity, and as next friend of [Mrs. Denny] to replace the Guardian, under 'any person' jurisdiction pursuant to RCW 11.88.120(2)." Br. of Appellant ("Next Friend") at 4 (emphasis omitted). It is true that the guardianship court expressed doubts regarding Anderson's ability to file

---

[11] This is consistent with the rationale for endorsing the same approach in other types of cases. For example, in In re Marriage of Rideout, the Supreme Court held that where competing documentary evidence must be weighed and issues of credibility resolved, the substantial evidence standard is appropriate. 150 Wn.2d 337, 351, 77 P.3d 1174 (2003). More recently, in Dolan v. King County, the Supreme Court held that "substantial evidence is more appropriate, even if the credibility of witnesses is not specifically at issue, in cases such as this where the trial court reviewed an enormous amount of documentary evidence, weighed that evidence, resolved inevitable evidentiary conflicts and discrepancies, and issued statutorily mandated written findings." 172 Wn.2d 299, 311, 258 P.3d 20 (2011). The court cited the trial court's fact-finding expertise and conservation of judicial resources as guiding rationales. Dolan, 172 Wn.2d at 311.

his motion as Mrs. Denny's next friend. However, having expressed these doubts, the court did not simply dismiss the motion but, rather, evaluated the motion on its merits. It was at this point that Anderson's motion was dismissed. As this decision—the decision on the merits of the motion—is the only decision that might entitle Anderson to appellate relief, it is the decision we will review later in this opinion.

At the time of Anderson's motion, RCW 11.88.120 provided, in pertinent part:

> (2) Any person, including an incapacitated person, may apply to the court for an order to modify or terminate a guardianship or to replace a guardian or limited guardian. . . .[12]
> (3) . . . The court may (a) direct the clerk to schedule a hearing, (b) appoint a guardian ad litem to investigate the issues raised by the application or to take any emergency action the court deems necessary to protect the incapacitated person until a hearing can be held, or (c) *deny the application without scheduling a hearing, if it appears based on documents in the court file that the application is frivolous.* Any denial of an application without a hearing shall be in writing with the reasons for the denial explained. . . .

Former RCW 11.88.120 (1991).

Herein, the trial court entered a written order denying Anderson's motion with prejudice. In support of its order, it entered 10 findings of fact and five conclusions of law. The order relied, inter alia, on the following factors: Anderson was not identified as a person interested in Mrs. Denny's welfare by the order that established the guardianship. He never filed a request for special

---

12 We note in passing that the language of this subsection undermines Anderson's contention regarding a third party's entitlement to participate in an ongoing guardianship by claiming to be the incapacitated person's "next friend." Because "any person" is permitted to petition under the statute, there is no need for a third party to establish itself as the incapacitated person's "next friend."

notice in the guardianship. He never applied to be appointed to speak for Mrs. Denny as her "next friend." Despite his representations to the contrary, Mrs. Denny's children did not support his motions (Marianne opposed them, while Richard declined to join them). Moreover, unchallenged findings of fact establish that Anderson violated procedural rules for filing motions, failed to post bond, failed to pay judgments for attorney fees awarded to the guardianship estate, and filed pleadings in violation of the superior court's prohibition. It is also notable that, when the guardianship was established, Mrs. Denny specifically requested that information about it be withheld from her brother, Anderson's father.

Anderson's petition offered no compelling reason for his involvement in Mrs. Denny's guardianship, particularly given that the guardianship was already contentious and Mrs. Denny's interests were capable of being represented by either of her children or the court-appointed guardian. Furthermore, Anderson demonstrated a disregard for the conservation of Mrs. Denny's estate by filing pleadings that he did not ensure were truthful or legally sound. This ran contrary to his professed desire to act in her best interests. Therefore, we conclude that the superior court's order striking Anderson's motion was proper, both as to Anderson individually and as to Anderson as Mrs. Denny's next friend.[13]

---

[13] We note that, while it was permissible for Anderson to file the motion pro se to the extent that it was made in his individual capacity, he acted contrary to law by doing so in his purported capacity as Mrs. Denny's "next friend."

We have previously explained the pertinent, "long-standing" rule.

[W]ith limited exception, Washington law requires individuals appearing before the court on behalf of another party or entity to be licensed in the practice of law. Dutch Vill. Mall v. Pelletti, 162 Wn. App. 531, 535, 256 P.3d 1251 (2011). Ordinarily, only those persons licensed to practice law in this state may do so without liability for unauthorized practice. See RCW 2.48.170. Practicing law without a license is a gross misdemeanor in Washington. RCW 2.48.180(3)(a); Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd., 155 Wn.

- 17 -

Although Anderson filed briefs in this court once again purporting to act as Mrs. Denny's "next friend," he does not separately claim that he should be permitted to act as her next friend on appeal. Because we conclude that the superior court properly dismissed Anderson's motion to modify the guardianship, thereby rejecting his only asserted basis for participation in the ongoing proceedings, we do not separately address arguments regarding decisions made by the guardianship court that Anderson purports to raise as Mrs. Denny's "next friend."[14]

---

App. 479, 485, 230 P.3d 608, rev'd on other grounds, 170 Wn.2d 577, 245 P.3d 764 (2010).

There is a recognized "pro se exception" to these general rules where a person "'may appear and act in any court as his own attorney without threat of sanction for unauthorized practice.'" Cottringer v. Dep't of Emp't Sec., 162 Wn. App. 782, 787, 257 P.3d 667 (2011) (quoting Wash. State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n, 91 Wn.2d 48, 56, 586 P.2d 870 (1978)). But this pro se exception is limited, applying "'only if the layperson is acting *solely on his own behalf* with respect to his own legal rights and obligations." Cottringer, 162 Wn. App. at 787-88 (emphasis added) (quoting Wash. State Bar Ass'n, 91 Wn.2d at 57).

No On I-502 v. Wash. NORML, 193 Wn. App. 368, 372-73, 372 P.3d 160 (2016).

While the legislature may create exceptions to the general rule that no one other than a licensed attorney may represent the interests of another in court, see, e.g., RCW 12.40.080(1) (allowing corporations to be represented by nonattorneys in small claims court), as a common law doctrine, "next friend" status—while allowing a person standing to assert the interests of another—does not allow the "next friend" to appear in court and act as an attorney on behalf of the ward. See, e.g., In re Guardianship of Ivarsson, 60 Wn.2d 733, 736, 375 P.2d 509 (1962) (next friend status approved; next friend represented by counsel).

[14] Anderson's brief filed as Mrs. Denny's "next friend" included the following assignments of error:

1. The Superior Court erroneously held that Washington does not recognize standing of a next friend. . . .
2. The Superior Court erroneously denied Ward's motion for examination exclusively by the health care professional whom she selected. . . .
3. The Superior Court erroneously denied Mrs. Denney's [sic] motion for an attorney independent from the Guardian. . . .
4. The Superior Court erroneously granted an order approving Guardian's annual report for 2011, and denied motions for reconsideration. . . .
5. The Superior Court erroneously denied Ward's motion to replace Guardian and modify guardianship. . . .

Brief of Appellant ("Next Friend") at 3. As Richard makes many of the same assignments of error, some of these alleged errors are addressed below, in our analysis of Richard's claims.

IV

A final preliminary issue is the timeliness of Richard's appeal. Ohana contends that Richard's appeal was not timely as to some of the orders designated. We agree.

A party must normally file a notice of appeal within 30 days of the decision for which review is sought. RAP 5.2(a). The 30-day period is extended, however, by a timely motion for reconsideration. RAP 5.2(a), (e). A motion for reconsideration is timely only when it is filed within 10 days after entry of the judgment, order, or decision. CR 59(b). A trial court may not extend the time period for filing a motion for reconsideration. CR 6(b); see also Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wn.2d 366, 367-68, 849 P.2d 1225 (1993) (holding motion for reconsideration and notice of appeal were untimely notwithstanding "important [constitutional] issues").

When an appellant fails to timely perfect an appeal, the disposition of the case is governed by RAP 18.8(b). Schaefco, 121 Wn.2d at 368. That rule states:

> The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal . . . . The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section.

RAP 18.8(b).

Richard's notice of appeal was filed on October 10, 2012. Ohana contends that it was untimely with respect to (1) the Order Reaffirming Court's Prior Order of December 17, 2010 entered March 29, 2012; (2) the Order

Approving Interim Report entered December 17, 2010; and (3) the Findings of Fact, Conclusions of Law and Order on Motion entered May 16, 2012.

The 30-day appeal deadlines for the above three orders were not extended by the filing of any posthearing motions. No motions for reconsideration were filed with respect to the March 29, 2012 order or the December 17, 2010 order. Although a motion for reconsideration was filed with respect to the May 16, 2012 order, Richard concedes that this motion for reconsideration was not timely.[15] Absent a "timely motion," the 30-day time period for appeal was not prolonged. It expired prior to the filing of Richard's notice of appeal. See RAP 18.8(b).

Because Richard's appeal as to these three orders was untimely, and he cites no pertinent authority for extending the relevant appeal deadlines,[16] we do not review his contentions regarding these orders. Furthermore, because his appeal from the underlying May 16, 2012 order was untimely, his motion for reconsideration of that order was properly denied, and his appeal from the September 10, 2012 order denying revision is without merit.

*Richard's contentions*

V

Richard's first assignment of error states that "[t]he superior court erred in

---

[15] The deadline was May 29, 2012. Because the tenth day after the ruling fell on Saturday May 26, the next court day after May 26 was May 29, due to the Memorial Day holiday. The motion was received by the Clerk of the Court on May 30, making it one day late. Under GR 30(c)(1), "[a]n electronic document is filed when it is received by the clerk's designated computer during the clerk's business hours; otherwise the document is considered filed at the beginning of the next business day."

[16] The authorities that Richard relies on pertain to whether constitutional issues can be raised for the first time on appeal. These authorities do not justify, or even address, extending the appeal deadline. Schaefco, 121 Wn.2d at 367-68 (holding motion for reconsideration and notice of appeal were untimely notwithstanding "important [constitutional] issues").

its interpretations of its 2009 order." Br. of Appellant (Richard Denny) at 4.

Richard did not, and could not now, appeal from the 2009 order. Moreover, to

the extent that Richard means to argue that the allegedly improper interpretations

were manifested in subsequent decisions of the guardianship court, he does not,

contrary to RAP 10.3(a), identify those decisions and they are not otherwise clear

from his appellate briefing. Accordingly, we do not further address this

assignment of error and, instead, review the guardianship court's interpretation of

the 2009 order establishing Mrs. Denny's limited guardianship where relevant to

other, proper assignments of error.

## VI

In his second assignment of error, Richard contends that "[t]he superior

court erred by denying Ms. Denny's constitutional and statutory rights to due

process when restricting or revoking her retained fundamental rights." Br. of

Appellant (Richard Denny) at 4. This is so, he asserts, because Mrs. Denny was

not afforded the right to representation related to Anderson's motion to replace

the guardian. We disagree.

"There is a presumption that civil litigants do not have a right to appointed

counsel unless their physical liberty is at risk." In re Marriage of King, 162 Wn.2d

378, 395, 174 P.3d 659 (2007) (citing Lassiter v. Dep't of Social Servs., 452 U.S.

18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)). This presumption is overcome

only when the Mathews v. Eldridge balancing factors weigh heavily enough

against that presumption. 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Those factors are "'[f]irst, the private interest that will be affected by the official

action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" King, 162 Wn.2d at 395 (alteration in original) (quoting Mathews, 424 U.S. at 335).

Washington's guardianship statutes are designed to comply with the requirements of due process. Thus, RCW 11.88.045(1)(a) guarantees counsel for persons who are alleged to be incapacitated and for persons already subject to a guardianship when "the rights and interests of . . . [the] adjudicated incapacitated person cannot otherwise be adequately protected and represented." The right to counsel after an adjudication of incapacity also exists where fundamental liberty interests are at stake such as commitment to an institution, electroshock therapy, psychosurgery, or psychiatric procedures that restrict freedom of movement. See RCW 11.92.043(5).[17]

Herein, as required by due process principles and the pertinent guardianship statutes, Mrs. Denny was represented by independent legal counsel when the court adjudicated her to be incapacitated.[18] It is true that she

---

[17] See also In re Guardianship of Hayes, 93 Wn.2d 228, 234, 608 P.2d 635 (1980) (requiring independent guardian ad litem before superior court may grant a petition for sterilization based on the "fundamental right to procreate"); In re Guardianship of K.M., 62 Wn. App. 811, 817, 816 P.2d 71 (1991) (independent counsel required because of the "gravity and finality of an authorization to sterilize"); and In re Guardianship of Ingram, 102 Wn.2d 827, 689 P.2d 1363 (1984) (independent counsel appointed where the Guardian sought authority to remove the ward's larynx).

[18] In re Guardianship of Decker held that persons subject to a limited or a full guardianship have been adjudicated to be incapacitated within the meaning of chapter RCW 11.88, and specifically rejected the argument that because a person agreed to a limited

-22-

was not provided independent counsel related to the disposition of Anderson's motion to modify the guardianship, but this was not required. It was not mandated by statute,[19] and the decision in question did not trigger due process protections because Mrs. Denny was not at risk of losing additional fundamental rights. To the extent that her fundamental rights were implicated, the court made its decision affecting those rights at the 2009 hearing establishing the guardianship.

Richard also asserts that Mrs. Denny was improperly prevented from retaining counsel on her own. The fact that Mrs. Denny was not permitted to retain independent counsel was not a matter of either constitutional or statutory law but, rather, was a consequence of the court's 2009 order establishing the guardianship.

Generally, a court order is enforced according to the plain meaning of its terms, read in light of the issues and purposes surrounding its entry. R/L Assocs., Inc. v. City of Seattle, 113 Wn.2d 402, 410, 780 P.2d 838 (1989); Zink v. City of Mesa, 162 Wn. App. 688, 707-08, 256 P.3d 384 (2011). Unambiguous orders do not require interpretation. In re Marriage of Bocanegra, 58 Wn. App. 271, 275, 792 P.2d 1263 (1990).

The 2009 order is not ambiguous regarding Mrs. Denny's right to retain independent legal counsel. Retaining a lawyer is a contractual matter, and the

---

guardianship they were not adjudicated incapacitated. 188 Wn. App. 429, 440, 353 P.3d 669, review denied, 184 Wn.2d 1015 (2015).

[19] Richard contends that, pursuant to a 2015 amendment to RCW 11.88.120, an incapacitated person also has a right to counsel for motions to modify or terminate the guardianship. (It is unclear whether he believes it to be a right to appointed or retained counsel.) Apart from the issue of whether his interpretation of the new provision is correct, he cites no persuasive evidence that it was intended to apply retroactively.

order establishing Mrs. Denny's limited guardianship gave the authority to contract on behalf of Mrs. Denny to the guardian.[20] While the order included an exception for "the right to enter into contract provided it is solely under the advice and direction of competent independent counsel and in furtherance of her estate planning," the same provision reiterated that, "[i]n all other areas, Mrs. Denny [did] not have the right to enter into a contract." The request to retain independent counsel for the ongoing guardianship proceedings, allegedly made by Mrs. Denny, did not fall within this exception.[21]

Richard's contention that Mrs. Denny was improperly denied counsel (either appointed or retained) is unavailing.

## VII

In his third assignment of error, Richard contends that "[t]he superior court erred by failing to supervise [Ohana] and address its fiduciary misconduct." Br. of Appellant (Richard Denny) at 5. The focus of his complaint appears to be the temporarily incorrect letters of guardianship. However, contrary to RAP 10.3(4), he fails to identify the superior court decision that allegedly was erroneous. Moreover, although Richard asserts that "[t]he superior court should have imposed sanctions against [Ohana] for its misconduct," Br. of Appellant (Richard

---

[20] Specifically, the order gave the guardian the authority "[t]o undertake the management of the financial affairs of the incapacitated person, including but not limited to contracting for and incurring obligations on behalf of the incapacitated person."

[21] Richard also contends that "[t]he superior court did not correctly determine in May 2012 that Ms. Denny lacked capacity to form an attorney-client relationship." Br. of Appellant (Richard Denny) at 39. As discussed above, Richard's appeal from this order ("Findings of Fact, Conclusions of Law and Order," dated May 16, 2012) was untimely. Accordingly, this contention is not addressed at length. We note briefly, however, that substantial evidence was presented that the circumstances that had justified establishing the guardianship in 2009 had deteriorated further by 2012. This supports the trial court's decision not to modify the terms of the limited guardianship to permit Mrs. Denny to retain independent counsel for the guardianship proceedings.

Denny) at 44, and offers that disgorgement was the appropriate remedy, Br. of Appellant (Richard Denny) at 45, he does not establish, by citation to the record, that he ever made such a request to the guardianship court. The absence of record citations is contrary to RAP 10.3(6), and RAP 2.5 would preclude our review of Richard's request in the first instance if, indeed, it was not first made in the superior court. See Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 441, 191 P.3d 879 (2008) (appellants cannot raise issues for the first time on appeal because it deprives the appellate courts of an adequate record on review).[22] Therefore, we decline to further address this issue.

## VIII

In his fourth assignment of error, Richard contends that "[t]he superior court erred entering its order of January 25, 2013." Br. of Appellant (Richard Denny) at 5. This is so, he asserts, because the court erred (1) by barring him from participating in Mrs. Denny's healthcare decision-making and accessing her health records, and (2) by authorizing Ohana to place a live-in healthcare worker in Mrs. Denny's residence. We disagree.

Beginning with the first asserted error, the authority to manage decisions regarding Mrs. Denny's healthcare and her health records was given to Ohana in the 2009 order establishing Mrs. Denny's limited guardianship. Pursuant to that order, Ohana was given the authority to make health care decisions for Mrs. Denny (after consulting her), to supervise medications, to provide substitute

---

[22] We note, however, that disgorgement is an equitable remedy within the superior court's discretion. In this case, the guardianship court accepted Ohana's explanation for the incorrect letters of guardianship and took no action against it. This fact would weigh heavily were we—contrary to our actual decision—to entertain Richard's request.

informed consent for medical treatment, to select health care providers (after consulting her), to hire caregivers and case managers, and to provide personal assistance for her. The order also gave Ohana the authority "[t]o review, release, consent to the release of and use as appropriate all medical, dental, mental health, psychological, psychiatric, medication, laboratory and social services work records, charts, evaluations and reports concerning the incapacitated person." This is the authority that Richard asserts was improperly given to Ohana in the January 2013 order.

Because the January 25, 2013 order did not expand the guardian's authority to make health care decisions for Mrs. Denny beyond the parameters of the 2009 order, Richard's challenge to the later order is, in effect, an indirect challenge to the earlier order. Richard did not timely appeal from that order and could not do so now. Accordingly, Richard's challenge to the January 2013 order, on the basis asserted, fails.[23]

Regarding Richard's second assertion, the authority to place a live-in healthcare worker in Mrs. Denny's residence was also given to Ohana in the 2009 order establishing the guardianship. Pursuant to that order, Ohana was granted the authority, "[a]fter consultation with Ms. Denny, to select or discharge any health care or medical provider," "to provide for or contract for case care or management services on behalf of the incapacitated person," and "to provide for such other personal assistance as the incapacitated person requires." Thus, the

---

[23] Furthermore, Richard does not establish an entitlement to participate in his mother's healthcare. Under Washington's healthcare informed consent statute, a court-appointed guardian has highest priority in terms of those who may consent to healthcare on behalf of an incompetent patient. Children may provide such consent only if the guardian is unavailable. RCW 7.70.065(1); RCW 11.88.010(1)(e).

decision to hire a caregiver fell squarely within the authority granted to Ohana by the 2009 order. Moreover, when Ohana made the decision to exercise its authority and actually hire a residential healthcare worker, the guardianship court entered a finding—unchallenged on appeal—that this decision was in Mrs. Denny's best interest.

Accordingly, Richard's challenges to the January 2013 order both fail.

IX

In his fifth assignment of error, Richard contends that "[t]he superior court erred by, in its June 19, 2012 order, enjoining Richard and Mr. Anderson from assisting Ms. Denny to express her concerns about [Ohana]'s misconduct." Br. of Appellant (Richard Denny) at 5. Richard is here referencing the court's order prohibiting him and Anderson from procuring Mrs. Denny's signature on court documents. His contention fails.

In exercising original jurisdiction over guardianship matters, superior courts have "full and ample power" to enter orders deemed "right and proper." RCW 11.96A.020, .040, .060. Moreover, when the superior court receives a petition to modify a guardianship or to replace a guardian, it may grant the relief "it deems just and in the best interest of the incapacitated person." Former RCW 11.88.120(4). Courts have long been concerned with protecting incapacitated persons from undue influence and fraud. Lamb, 173 Wn.2d at 184 (citing In re Guardianship of Bayer's Estate, 101 Wash. 694, 695, 172 P. 842 (1918)); RCW 74.34.135 (authorizing vulnerable protection orders upon the petition of an incapacitated person's guardian).

- 27 -

In support of the order at issue, the guardianship court found: "It is not in Mrs. Denny's best interest for third parties to procure her signature on documents that the evidence reflects she lacks capacity to understand or recall." A "best interest" finding depends on the facts and circumstances of each case and must be supported by a preponderance of the evidence. See In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

The risk of undue influence was one of the reasons for establishing the guardianship in 2009. The record dating back to the guardianship's inception documented that Mrs. Denny was highly susceptible to undue influence. Indeed, even after the guardianship was established, Mrs. Denny frequently signed conflicting documents prepared by others, under penalty of perjury. The contradictory documents signed by Mrs. Denny related to both her estate (e.g., conflicting durable powers of attorney) and her person (e.g., conflicting statements concerning medical evaluations). Thus, the evidence amply supported the trial court's finding that the narrowly-tailored restrictions at issue were necessary to Mrs. Denny's best interests.[24]

Richard's contention to the contrary is unavailing.

*Anderson's contentions*

X

Anderson's first and fourth assignments of error were related to his ability to participate in the guardianship proceedings as Mrs. Denny's next friend and

---

[24] Furthermore, Richard's attempt to characterize the restriction as implicating Mrs. Denny's rights to free expression and to access the courts fails because the unchallenged findings of fact establish that the documents Mrs. Denny signed do not accurately represent her intent or wishes and are not credible evidence. Findings of fact 6 and 17.

the dismissal of his motion to modify the guardianship.  Br. of Appellant (Thomas Anderson) at 2-3.  These issues were previously resolved.

In his second assignment of error, Anderson contends that "[t]he Superior Court erroneously granted an order requiring Anderson to post $50,000 bond." Br. of Appellant (Thomas Anderson) at 3.  He is wrong.

Anderson filed his motion to modify Mrs. Denny's guardianship pursuant to former RCW 11.88.120, which authorized the superior court to "grant such relief as it deems just and in the best interest of the incapacitated person."  Former RCW 11.88.120(4).  This statute did not set out the types of relief thereby made available to the court with any specificity.  However, there is precedent for superior courts ordering nonresident plaintiffs in civil cases to post security bonds.  Specifically, RCW 4.84.210 authorizes a trial court to order a nonresident plaintiff to provide security for any cost award that ultimately might be entered against it.  In the statutory scheme regulating guardianships, "any person" can commence a claim, necessitating court action.  The potential for abuse in such a situation is similar to the potential for abuse that gave rise to RCW 4.84.210. Because broad discretion to "grant such relief as it seems just and in the best interest of the incapacitated person" has been given to the superior court by the legislature, we conclude that applying the bond requirements applicable to out-of-state plaintiffs to out-of-state guardianship claimants was well within the superior court's discretion.[25]  Anderson's claim of error fails.

---

[25] Anderson does not challenge the amount of the bond.  Nevertheless, we note that, although the presumptive maximum non-resident plaintiff bond under RCW 4.84.210 is $200, the trial court may order additional security where an independent basis in contract, statute, or equity allows, White Coral Corp. v. Geyser Giant Clam Farms, LLC, 145 Wn. App. 862, 867, 189 P.3d

XI

Anderson's third assignment of error contends that "[t]he Superior Court erroneously granted an order allowing, and entered judgment for, costs and fees against Anderson." Br. of Appellant (Thomas Anderson) at 3. This is so, he asserts, because he was acting on Mrs. Denny's behalf. He is incorrect.

RCW 11.96A.150 permits the superior and appellate courts in guardianship matters to award attorney fees from any party to any party "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1); see also In re Guardianship of McKean, 136 Wn. App. 906, 918, 151 P.3d 223 (2007). Furthermore, as explained above, former RCW 11.88.120(4) broadly authorized guardianship courts to "grant such relief as it deems just and in the best interest of the incapacitated person."[26]

Herein, the superior court cited four reasons for awarding fees against Anderson: (1) his motion did not benefit Mrs. Denny or her estate, (2) Anderson falsely attributed statements to Mrs. Denny's attorney Timothy Austin, (3) Anderson falsely represented that his motion was unanimously supported by Mrs. Denny's family, and (4) the argument that Ohana's attorney had a conflict of interest in representing Ohana was not well grounded in fact or law. Based on these findings, and because Anderson was subject to the superior court's authority to enter such an order, having voluntarily submitted himself to the

---

205 (2008), and the statute permitting guardianship courts to award attorney fees "in such amount and in such manner as the court determines to be equitable," RCW 11.96A.150(1), provides one such basis. Therefore, even under the general statute, the guardianship court could properly require additional security for potential awards of attorney fees.

[26] Notably, the current provision, RCW 11.88.120(2)(d) (2015), explicitly grants the court the authority to award attorney fees and costs.

court's authority, we conclude that the fee and cost award was also justified pursuant to RCW 11.88.120(4) and by RCW 11.96A.150(1).

The guardianship court's attorney fee award was properly made.

XII

Richard's final contention is that he should be awarded reasonable attorney fees on appeal. Ohana, in turn, contends that it should be awarded reasonable attorney fees relative to Richard's appeal and to each of Anderson's appeals.

RAP 18.1 permits attorney fees to be awarded on appeal if applicable law grants the party the right to recover reasonable attorney fees. RCW 11.96A.150 permits the appellate courts in guardianship, probate, and trust matters to award attorney fees from any party to any party "in such amount and in such manner as the court determines to be equitable." RCW 11.96A.150(1). In determining whether to award fees under RCW 11.96A.150, we "may consider any and all factors . . . deem[ed] to be relevant and appropriate, such as whether the litigation benefits the estate." In re Guardianship of Decker, 188 Wn. App. 429, 440, 451, 353 P.3d 669, review denied, 184 Wn.2d 1015 (2015) (awarding guardian attorney fees on appeal against ward's former attorney who sought to "vindicate" her due process rights).

As demonstrated above, the arguments made on appeal by both Richard and Anderson were contrary to established law and, frequently, were advanced in a manner that violated the rules of appellate procedure. Furthermore, the ongoing litigation is contrary to Mrs. Denny's best interests and acts as a drain on

her estate's resources. Thus, the equities weigh heavily in favor of Ohana's request and against Richard's.

Accordingly, Richard's request for an award reasonable attorney fees is denied. Ohana's request is granted. An award in favor of Ohana and against Richard is appropriate with regard to Ohana's efforts to respond to Richard's briefing. An award in favor of Ohana and against Anderson is appropriate with regard to Ohana's efforts to respond to Anderson's briefing (both "pro se" and as "next friend"). Upon compliance with RAP 18.1, a commissioner of this court will enter the appropriate orders.

Affirmed.

We concur:

Cox, J.

Dwyer,

Becker, J.

- 32 -